## Worrall *versus* Gheen.

*Liability of Endorser on Note altered after Endorsement.*

Where the maker of a promissory note which had been drawn for a certain sum by him, and endorsed for his accommodation by another, afterwards altered it to a larger sum, by taking advantage of a vacant space left in the printed form on which it was written, it was held, on a case stated, that the holder was entitled to judgment for the true amount of the note against the endorser.

ERROR to the Common Pleas of *Chester county*.

This was an action of *assumpsit*, entered February 17th 1859, by George F. Worrall against Levi A. Gheen, in which the following case was stated for the opinion of the Court of Common Pleas, in the nature of a special verdict.

" Charles M. Layman filled up a printed blank note in the following manner, and in the following terms. The annexed is a correct copy as it was executed by him : ·

$ 50.                                        October 14th 1857.

     *thirty* ·days after date, I promise to Pay to the Order of *Levi A. Gheen,*

AT THE BANK OF CHESTER COUNTY,

              *fifty* $\frac{}{100}$ Dollars,

without defalcation, for value received.
  Credit the drawer,       C. M. LAYMAN.
   LEVI A. GHEEN.

[Worrall v. Gheen.]

Layman called upon Levi A. Gheen with the note, and requested him to endorse it. Gheen did so, by writing his name across the back of the note, and signed his name under the words " Credit the drawer." Layman then took the note away and fraudulently altered its amount from fifty dollars to one hundred and fifty dollars, by adding the figure " 1" between the $ and the figure 50, and the words " One hundred &" before the word fifty.·

The fraud was so well executed, that the appearance of the note was not such as to excite the suspicions of a man in ordinary business. On inspection a difference in the colour of the ink with which the words " One hundred &" were written may be perceived. The note, as altered, reads as follows:

$150. October 14th 1857.

*thirty* days after date, I promise to Pay to the Order of *Levi A. Gheen*,

AT THE BANK OF CHESTER COUNTY,

*One hundred & fifty* $\frac{00}{100}$ Dollars, without defalcation, for value received.

Credit the drawer, C. W. LAYMAN.
LEVI A. GHEEN.

The note as thus altered was discounted by Worrall, the plaintiff, and when it became due he had it regularly protested. Before the bill became due Layman had fled to parts unknown. The original note is to be considered in evidence as a part of the case for the inspection of the court. Layman, Gheen, and Worrall, resided in the borough of West Chester.

The question for the opinion of the court is, whether the defendant is liable to pay the said note, or any part thereof. If the court should be of the opinion the defendant is liable, then judgment is to be rendered for the plaintiff, for such amount as the court may determine; if otherwise, then judgment is to be given for the defendant."

The case was argued, March 17th 1859, and again on the 26th of May 1860, when the court below ordered judgment to be entered for the defendant.

The plaintiff thereupon sued out this writ, assigning for error here the judgment of the Common Pleas in the case stated.

*U. V. Pennypacker*, for plaintiff in error.—The case presents the question, whether Gheen, the defendant, who endorsed a note drawn by Layman for fifty dollars, and which Layman afterwards altered to $150, is liable to the plaintiff for the whole amount of the note or any part thereof. It is admitted the signature of Gheen to the bill is genuine—that the rest of the bill

[Worrall *v.* Gheen.]

is in the handwriting of the drawer. The note as filled up and made to read for $150 is without erasure, and presents no appearance of a single letter or word put in the place of another. The fraud has been committed by means of an addition made to the note. It appears from the case stated, that when Gheen endorsed the note, a partial blank was left, sufficient to allow the drawer, Layman, to increase the sum without suspicion, and in such a manner that no person using ordinary diligence would have discovered that it had been made improperly.

It is evident that Layman, when he filled the note up for fifty dollars, designed at the time the perpetration of the fraud. He placed the figures 50 a sufficient distance from the $ to allow another figure to be inserted between it and the dollar mark. In the body of the note (which is a printed blank note) on the line where the sum was written, the word "fifty" was commenced in the middle of the line, *and with a small letter*, so that ample space was left in that line for the insertion of other words before the word "fifty." The note thus prepared and written, Gheen endorsed on the back, and also placed his name on its face under the words "Credit the drawer," and handed it back to Layman. Layman then inserted the figure 1 between the figures 50 and the dollar mark ($), and wrote before the word "fifty," the words "One hundred &," and passed it off as a genuine bill for $150. This alteration or addition to the note is not obvious or apparent. When the attention is called to it, it appears by inspection in some difference in the colour of the ink, but of so slight a character as not to arrest the attention or arouse suspicion. The note for the smaller sum thus imperfectly filled up and written by Layman, the drawer, was endorsed by Gheen and left by him in the hands of the drawer.

As between Gheen, the endorser, and an innocent holder into whose hands the note afterwards passed for value for the larger sum, is not Gheen blameable for permitting the note to pass out of his hands into the commercial world with the open blanks on its face so left as to admit of the sum being enlarged so easily and so orderly? We think he was. To use the language of C. J. Best, in a similar case, in delivering his opinion in the case of Young *v.* Grote, 4 Bing. 253, "A man of business would have guarded against fraud in the mode of filling it up; he would have placed the word fifty at the beginning of the line, and would have commenced it with a capital letter so that it could not have had the appearance of following properly after a preceding word; he would also have placed the figure 5 so near the printed $ as to prevent the possibility of interpolation."

If Gheen had taken the precaution to have run his pen along the blank space on the line where the additional words "One hundred &" were afterwards written, the insertion of the words

[Worrall v. Gheen.]

over the erasure could not have been made without exciting suspicion. But this duty he omitted, and, in consequence of this neglect, the note passed from him in such a situation as put it in the power of any one into whose hands it might fall to deceive and defraud by increasing the sum.

"Any one who leaves it in the power of another to deceive may be said to collude with him beforehand:" Fisher v. Knox, 1 Harris.

"Where a blank is left in a bill sufficient to admit the insertion of part of one word and the whole of another, as in the present case, any person who puts his name upon it, whether as drawer, acceptor, or endorser, and trusts it in the hands of another, and particularly of the person by whom it was written, in order to its being passed by him into the circle, must be liable for the consequences, in the same manner as if it had been left blank in the sum altogether, it being nearly the same thing whether the blank be total or partial. And although upon a narrow inspection a small crowding of the letters, and some little difference in the colour of the ink might have been perceived, both are too trifling to put the discounter on his guard:" Pagan v. Wylie, cited in Ross on Commercial Law, Law Lib. No. 82, p. 140.

1 Ross on Bills and Notes, Law Library 82, p. 133, lays this doctrine down as settled law:—

"Where a bill is drawn so carelessly as to admit of an alteration in the sum without detection, the parties to the bill will be liable to the onerous holder of it to the full amount as altered; but if the alteration is so obvious as not to deceive a party of ordinary vigilance, or if the alteration is of such nature as that the parties to the bill are in no way to blame, the bill will be good for the original amount only." The cases of Hall v. Fuller, Young v. Grote, Pagan v. Wylie, Graham v. Gillespie, are published in full by Ross in support of the foregoing syllabus, and rule the case in hand.

Graham v. Gillespie, in all its leading features, is exactly like our case. The fraud was committed by means of an addition to the bill.

If a bill or check be drawn in so careless a manner as thereby to enable a third person to practice the fraud, the customer and not the banker must bear the loss: Chitty 460.

The sum should be clearly expressed in the body of the bill, written in figures at the head, and in words at length, in order to prevent alteration: Id. 181.

If a person by his acts, or silence, or negligence, misleads, or in any manner affects a transaction whereby an innocent person suffers a loss, the blameable party must bear it: 1 Story's Eq. §§ 386-7.

[Worrall *v.* Gheen.]

Where a blank is left in a bill sufficient to admit the insertion of part of one word and the whole of another, as in the present case, any person who puts his name upon it as endorser, and trusts it in the hands of the drawer by whom it was written, in order to its being passed by him, must be liable for the consequences in the same manner as if it had been left blank in the sum altogether, it. being nearly the same thing, whether the blank be total or partial: Pagan *v.* Wylie, reported in full in Ross on Commercial Law 160, Law Library, No. 82.

If the note had been totally blank when Gheen endorsed it, he must have been held to have given Layman a discretionary power in filling it up.

The same would have been the case if the note had been complete, except as to the sum; or if a part of the sum had been left blank, with the intention of enabling Layman to enlarge it at pleasure.

Now, since blanks were left sufficient to allow the fraud to be committed *by mere filling up said blanks*, it can make no difference in. a question with an innocent endorsee, that it was not intended or imagined by Gheen that any improper use would be made of them. No ordinary precaution on the part of Worrall would have enabled him to detect the fraud; while Gheen, by drawing lines along the blanks, might have prevented the possibility of its execution by Layman. If the loss happened without positive fault committed by Gheen, but by mere *carelessness* on his part, he is bound to bear the loss.

Gheen, by endorsing the note, held himself out to the public by his signature to be absolutely bound to every person who shall take the same for value. His endorsement amounts to, and is a contract with every holder, *that the instrument is genuine in all its parts:* Story on Promissory Notes 143, § 135; 2 Pickering 202; 4 Den. 404; 3 Bing. N. C. 468; 3 B. & C. 38; 1 Salk. 289.

Seeing that Gheen's signatures on the note were genuine, the holder took the note as a regular and sound instrument, without further explanation or scrutiny.

The policy of the law has been to· encourage the circulation of˜negotiable paper as the handmaid of commerce and trade. Gheen, by his endorsement, gives the note currency, and a holder placing confidence in such paper, and relying wholly on the signature of the endorser, takes it *bonâ fide*, without anything to awaken suspicion in the mind of a reasonable man, would be defrauded if the note should fail in his hands to be what it purports to be.

Worrall, in respect to the note, had a right to act on the faith that it had been signed and delivered for $150, by Gheen, as it purported to be for that amount in proper form. To permit

[Worrall v. Gheen.]

Gheen to aver against the confidence thus reposed exactly the opposite of his acts, would be a fraud on Worrall. The innocent party would be made to suffer for the benefit of him by whose default he was misled and deceived. "The maxim is justly applied to him, that where one of two innocent persons must suffer, he shall suffer who by his own acts occasioned the confidence and the loss:" 1 Story's Eq., § 387.

The endorser of negotiable paper should be held liable for the consequences of leaving a partial blank in a note, the same as if the blank had been total—where, as in this case, the partial blank left it so completely in the power of the drawer of the note to enlarge the sum, so that others might fully trust to the altered amount, and take the note in the honest belief that Gheen had promised, by his endorsement, to pay $150 to the holder, on failure of the drawer. To decide otherwise would, in fact, allow a party to benefit himself by means of his own carelessness.

The rule is general, that to take advantage of a mistake where one has the opportunity or means of putting it right, is a fraud in equity: 4 S. & R. 540; 8 Watts 38.

To hold a party responsible for the consequences of leaving a total blank in a note, and give him the benefit of a fraud arising from a partial blank, which he purposely or carelessly left, would be a gross outrage on every man's moral as well as legal sense of justice.

*Wm. Butler*, for defendant in error.—That the note was altered after endorsement, so as to make the contract an entirely different one, is admitted in the case stated.

A *forgery* was committed by Layman, and the *suit is on the forged instrument.*

Any alteration of a note, after endorsement, will render it void as to the endorser: Chitty on Contracts 182–3–4–5–6–7–8, 292; Hocker v. Jamison, 2 W. & S. 438. Being passed to an innocent holder makes no difference in the rule: Bank v. Russell, 3 Yeates 391; Stephens v. Graham, 7 S. & R. 505.

The plaintiff seeks to avoid the effect of the rule of law referred to by establishing an exception in this case. His argument is:—

1. The defendant was guilty of carelessness, by which the plaintiff was injured, or will be injured, if the defence succeeds.

2. If one of two innocent men must lose, he who occasions the loss must bear it.

1. In regard to the first point, it may be answered, if defendant's conduct was such as is usual with ordinary men living in the country, it cannot be held to have been careless. The defendant was not the maker of the note, he simply *endorsed* it as made and presented.

[*Worrall v.* Gheen.]

Is it usual for the endorser of a note to scrutinize the manner in which it is filled up, beyond observing the amount?—to see if the words and figures stand in close proximity to each other—to draw lines in seeming blanks—and to observe whether capital or other letters are used in spelling words in particular places, and to amend any apparent awkwardness in filling up? If not, then the defendant could not, in any event, be held to have been guilty of carelessness in not doing so in the case in hand.

The appearance of this note, when originally drawn and endorsed, may seem very unusual, now that our attention is called to the fact and the fraud. But if any one will take the pains to look over a collection of notes or checks drawn by an ordinary man in the country, he will be struck with the number drawn in manner not unlike this. To insert the sum in a blank note or check in the middle of the line, with no dash before or after it, or at one end of the line, with the balance of the line blank, is not at all uncommon; while to commence the word indicating the sum with a *small* letter is nearly as common as to do otherwise; and, as it is but the continuation of a sentence, is at least fully as *proper* as to do otherwise.

2. But if it were established that the defendant, in endorsing the note as he did, did an unusual thing, and was guilty of great carelessness, is it true that the plaintiff suffered from *it?* Was it the *defendant's* act which injured him? Not at all. It was the act—the fraud and forgery—of *Layman* which imposed upon and injured the plaintiff. If I purposely (though innocently), or carelessly, induce another to believe a fact is in a particular way, and that other act upon it, I shall not thereafter, as against that man, assert the fact to be otherwise. Both being innocent *I* shall suffer any loss which may follow, because *I* induced him to act. But if a man take advantage of my act (of carelessness, if you choose), *and commit a crime*, which I may thus have rendered easier than it otherwise would have been, am I to be held responsible for the loss which may flow from it?

If I write my name on a piece of blank paper, leaving it on my table, and a man enter my office in my absence, steal it, and write a note over it, and then pass it to an innocent holder for value; I am not liable on it, although I may be said to have been guilty of carelessness, and enabled the thief to impose on the innocent holder. It was not *my act* which injured him, but the act of the thief and forger: Nauce *v.* Lacy, 5 Alab. Rep. 37.

Such a rule as is advocated by the plaintiff would lead to most dangerous results. If a man in signing a note or bill were to write his name on the second line below, as is often done, instead of on the first, he would be held responsible for any obligation which might be added to his contract by a forger. Or if a man in writing a letter, or signing a petition, place his name, as is

[Worrall *v*. Gheen.]

often the case, a little distance from the body of the writing, he would be liable for any contract or obligation which a forger might choose to write over his name after cutting the balance of the paper away. A man could scarcely be safe in putting his name on paper.

The act of Layman was plain *forgery*. "Forgery avoids an instrument; and forgery is the fraudulent alteration of any writing to the prejudice of another:" Miller *v*. Reed, 3 Casey 249; Van Amringe *v*. Morton, 4 Wh. 382; Nazro *v*. Fuller, 24 Wend. 374; Woodworth *v*. Bank of America, 19 Johns. Rep. 391; Boyd *v*. Botherson, 10 Wend. 93; Goodman *v*. Eastman & Harford, 4 N. H. Rep. 455.

The plaintiff relies for the support of his position on four Scotch cases, to be found in Ross on Commercial Law.

The first of them, Hall *v*. Huller, is the case of an altered *check*—altered by expunging words and figures and inserting others; and the court held that the drawer of the check was *not liable* on it above the original amount. Neither the facts, nor the argument of the court in that case, seem to have any bearing on the case in hand.

The second, Young *v*. Grote, is the case of a *check* intrusted to an *agent* to *fill up and draw*, which he subsequently altered. This case turns on the doctrine of *principal and agent*, referred to in Goodwin *v*. Eastman & Harford, and does not support the plaintiff's position.

The third of these cases is Pagan *v*. Wylie. This case was decided in 1793; and it is submitted, with proper deference, that the decision upon the facts as reported is unreasonable, and not such as would be made at this day anywhere. It was a suit against the endorser of a holograph bill, which was originally drawn for eight pounds sterling. The word "eight" came *near the end* of a line, so near that to insert "*y four*" required it to be *crowded*. After the bill was endorsed, it was altered by adding "y" to the "eight," and the word "four" after it, making it read "eighty-four." This "y four" presented a "*crowded appearance*" at the end of the line. And yet the Scotch court held, that leaving at the *end of a line a space of about half an inch* (insufficient to write "y four" without *crowding*), was such *carelessness* as should subject the endorser to the liability of bearing the loss arising from the alteration. There are not probably three cases out of five, where good business men write notes, in which *as much, and often more*, space does not exist at the end of some of the lines. According to this authority, all these men are guilty of carelessness, and would be liable for any increase of their obligations made by *crowding in* a word of three or four letters at the end of a line.

The fourth of these cases is Graham *v*. Gillespie. This was

[Worrall *v.* Gheen.]

also a suit on a holograph bill against the acceptors. It was originally drawn for *fifty-eight* pounds, and the lines so shortened as to admit of the insertion of two or three words at the end of each. After acceptance, the holder of the bill, by adding the two or three words at the end of each line, made the bill read *three hundred & fifty-eight pounds;* and the bill presented no appearance of alteration. The opinion of the court is embraced in less than four lines. Now, in this case, there certainly would seem as much, and more reason, for holding the acceptors *liable for the bill as altered*, than in Pagan *v.* Wylie. Yet the court decided that the acceptors were *not so liable*, but that the bill was good for the *fifty-eight* pounds, the amount for which it called before being altered. It certainly will not be argued that this case is law here. For according to all . our authorities the *original bill* was destroyed, and all liability on it gone by reason of the alteration.

The opinion of the court was delivered, July 25th 1861, by

Lowrie, C. J.—We are not able to follow the cases of Pagan *v.* Wylie, and Graham *v.* Gillespie, Ross on Bills and Notes 194, 195, in the principle point decided there. And yet we would not be understood as denying the case of Young *v.* Grote, in the same book, p. 187; 4 Bing. 253. It may be that a check on a banker, so written as to be easily altered by the bearer of it, ought to be treated in the same manner as instructions sent by a principal to his agent, wherein the latter is not allowed to suffer from the carelessness of the former. Thus, probably, alterations in checks may be properly distinguished from those in bills, notes, and other contract. We doubt it, however.

This is a case of a printed form of a promissory note, filled up by the maker, and then endorsed for his accommodation by another, and then altered by the maker to a larger sum by taking advantage of some vacant space left in the form. If the sum had been left entirely blank, the inference would have been that the parties authorized the holder to act as their agent in filling it in, and they would have been bound accordingly. But where a sum is actually written, we can make no such inference from the fact that there is room to write more. This fact shows carelessness; but it was not the carelessness of the endorser, but the forgery of the maker that was the proximate cause that misled the holder. And we know not how we can say that a man can be chargeable with a contract because he did not use proper precaution in guarding against forgery in any of the thousand forms it may take. We know of no way of saving purchasers of negotiable paper from the necessity and the consequences of relying on the character of the man they buy it from, if they do not take the trouble of inquiring of the original parties.

[Worrall v. Gheen.]

But this plaintiff had no hand in the alteration, and, as this is a case stated, we are not met by any discrepancy of *allegata* and *probata*, and therefore we can give judgment for the true amount of the note : Ross on Bills and Notes 201. This brings the case within the Hundred Dollar Act, and therefore the judgment must be without costs.

May 1861. Judgment reversed, and judgment now entered for the plaintiff for sixty dollars and thirty-seven and a half cents, without costs.