Citizens National Bank of Greencastle, Appellant, *v.* Speck.

248

Argued October 24, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*John McD. Sharpe,* and with him *John W. Hoke* and *Walter K. Sharpe,* for appellant, cited: Liberty Trust Co. v. Tilton, 217 Mass. 462; Johnston v. Knipe, 260 Pa. 504.

*Edwin D. Strite,* and with him *William R. Davison,* for appellee, cited: Massey to Use v. Bohn, 4 D. &

C. 653; First National Bank v. Colonial Hotel Co., 226 Pa. 292; Gunster v. Scranton, etc. Co., 181 Pa. 327.

OPINION BY PARKER, J., March 3, 1933:

The Citizens National Bank of Greencastle, Pennsylvania, brought this action in assumpsit against Mary I. Speck, to recover a balance alleged to be due upon a promissory note for $11,000. In arriving at the balance sued for, the plaintiff appropriated toward the payment of the note the amount of a savings account which the defendant had in the plaintiff bank. The defense was that Miss Speck had signed a note in blank for the purpose of renewing a smaller obligation which she claimed the bank held against her, and that the cashier, Emmert Sheely, had fraudulently and contrary to the express understanding between them, filled in the blanks so that the note appeared for $11,000 in place of $1822.50, the amount of her true obligation to the bank. The defendant filed a counter claim for the amount of her savings account deposits which the bank had appropriated; the case was submitted to the court without a jury, under the Act of 1874, and judgment was entered in favor of the defendant for the amount of her counter claim, from which judgment an appeal was taken to this court.

The only question involved in this case is whether the defendant may avail herself of the defense that the cashier of the plaintiff fraudulently filled out the note for a greater sum than he was authorized to do by the defendant. The answer to this question necessarily depends upon the facts found by the lower court. We are obligated to give the same weight to the findings of facts by the trial court as to the verdict of a jury: McDonald Const. Co. v. Gill, 285 Pa. 305, 132 Atl. 368; Herring v. Weinroth, 61 Pa. Superior Ct. 529, 531. So considering the evidence, we will state the material facts. Emmert Sheely, a brother-in-law

of the defendant, was cashier of the plaintiff bank from about 1908 and continued in that capacity until June 27, 1927, when irregularities on his part were discovered by other bank officials. The court found with relation to the duties and powers of the cashier as follows: "Emmert Sheely, as cashier of the said plaintiff bank had for some time prior to February 3, 1923, and until the termination of his employment with said bank about June 27, 1927, authority on behalf of said bank to actively supervise and conduct its banking business, to receive in the ordinary course of banking business promissory notes and renewals thereof, to make, direct or supervise the making of the appropriate book entries relative thereto, and generally to perform the duties and exercise the authority of the cashier of a bank with larger powers than generally given such cashiers." In its discussion of the case, the court further said: "The testimony of the officers of the bank and of the directors thereof show conclusively that this was what is known as a 'one man bank' and that man was Emmert Sheely. The officers and directors trusted him implicitly and as none of them were actively looking after affairs of the bank he was allowed to have almost unlimited authority."

On February 3, 1923, the defendant gave to the bank her demand note in the sum of $1,822.50 and pledged as collateral Liberty Bonds and bonds of a street railway company. This note, at the request of the cashier, was renewed from time to time until October 20, 1924, when Sheely, without the knowledge of defendant, substituted his own note for $1,800 in place of defendant's note, paying the difference in cash. The defendant continued to pay the interest on this obligation to the bank, through the cashier, until irregularities of the cashier became known through investigations of a bank examiner. After the making of the

note for $1,800, all record of the note and the one it replaced disappeared from the bank records, but on November 3, 1924, at the bank's place of business and at the request of the cashier Sheely, the defendant, for the purpose of renewing her note for $1,822.50, signed her name to a note with spaces for date, payee, time of payment, amount, and nature of collateral blank and delivered it to the cashier with the understanding that it would be filled in for the sum of $1,822.50. Notwithstanding this agreement, Sheely fraudulently, in his own handwriting, filled in the blank spaces so that it became a note payable on demand to the plaintiff for $11,000 with Liberty Bonds of a value of $11,500 as collateral. The evidence discloses that these bonds were the property of a customer who had left them with the bank for safekeeping, and that they appeared as collateral only when the bank examiner was performing his duties. Again, on January 2, 1926, under like circumstances, the note sued upon was secured in blank except for signature. This was filled in in the same manner as the preceding note, in fraud of the defendant.

The collateral originally deposited by the defendant and her original note disappeared about the same time, and it having been shown that defendant did not receive the collateral and that these bonds were of the same value as the amount of the note, the note for $1,822.50 and defendant's collateral passed from the picture, and we are not concerned with these items. The lower court found that the records of the bank showed that the cashier Sheely substituted the $11,000 note for notes of the American Remedy Company aggregating $600 and a note for $10,400 signed by C. C. Sheely, who was a brother of the cashier. The court also found as a fact: "The directors of The Citizens National Bank of Greencastle, Pa., had for a long period before the transactions with the de-

fendant hereinbefore referred to, permitted its cashier, Emmert Sheely, a wide power in dealing with its customers and in accepting notes and renewals of the same......Its examining committees permitted him to furnish the data for its examinations and made no practical examinations at all. The bank made its said cashier its full agent in practically all its transactions with its customers and ratified what he did as such agent without question.''

It is admitted that a fraud was perpetrated on the defendant and the bank by the bank's cashier, yet the plaintiff claims the right to avail itself of the fruits of the fraudulent transaction and disavow responsibility for the actions of the one who represented it in the very same matter. We are all of the opinion that this cannot be done under the circumstances here present, and is contrary to a firmly established legal principle. In the case of Atlantic Cotton-Mills v. Indian Orchard Mills, 147 Mass. 273, 17 N. E. Rep. 496, 501, a case cited in all the textbooks on the subject with which we are concerned, the principle involved is stated as follows: ''The doctrine is universal, and prevails alike at law and in equity, that a person, though innocent, cannot avail himself of an advantage obtained by the fraud of another, unless there is some consideration moving from himself. It was long ago declared by Lord MANSFIELD that, 'although a third person shall not be punished for the fraud of another, he shall not avail himself of it. There is no case in the law where that can be done.' '' The case to which we have just referred is an illuminating one, and, as was said by Mr. Justice MITCHELL in the case of Gunster v. Scranton, 181 Pa. 327, 337, 37 Atl. 550, is ''entirely sound''. In the Atlantic Cotton-Mills case, a common officer in two corporations alternately drew funds from each in favor of the other to cover up his defalcations. When the irregularities were discovered, each cor-

poration was compelled to pay back what it received from the other, even though the other officers of the corporation had no knowledge of and were in no way responsible for the perpetration of the fraud. Mr. Justice MITCHELL, in the Gunster case (p. 337) makes this analysis of the Atlantic Cotton-Mills case: "But the decision is put explicitly on the ground that 'a party, even though innocent, cannot avail himself of an advantage obtained by the fraud of another unless there is some consideration moving from himself.'"

The cashier's fraud is the fraud of the corporation for the reasons that there was no consideration moving from the bank to the defendant, and that the bank as a corporation, through its normal channel, its officer, perpetrated the fraud and therefore had actual notice of such fraud. The entire management of the bank was entrusted to the cashier, and in this matter he was the sole representative of the bank; in fact, *was* the bank. The defendant received no proceeds from the note, nor was anything done with such proceeds on her behalf by the bank, but the credit was used apparently to cover irregularities of the cashier. The plaintiff's case fails at the second point indicated, for we are not concerned with a constructive notice, but here is a notice brought home to the bank by actual participation in the fraud. If what was done in this connection was not notice to the corporation, then no direct actual notice could be given. The board of directors had turned over to the cashier the entire management of the bank; he stood in the place of the directors by reason of a course of practice of which they approved. We are not required to resort to the legal fiction of a constructive notice, but have as specific and actual a notice as if it had been placed in writing and read to the board of directors in meetings regularly assembled. The corporation became possessed of this note through the act of no other person

than the cashier Sheely. The bank was not repre-. sented in any stage of the transaction by any one other than its cashier. It must be taken to have known what he knew, and it cannot retain the benefits of his act without accepting the consequences of his knowledge. All the rights that the plaintiff obtained, it obtained through Sheely, and it is answerable for his acts.

The conclusion at which we have arrived is in accord with decisions of the Supreme Court of this state. In Millward-Cliff Cracker Co.'s Estate, 161 Pa. 157, 28 Atl. 1072, the very principle was applied. Through the connivance of the president of the Spring Garden National Bank, the treasurer of the Millward-Cliff Cracker Company executed notes in favor of the bank for the personal benefit of the president and his associates and in fraud of the Cracker Company. When the notes were discounted, they were placed to the individual credit of the president or person designated by him, and the Cracker Company received no benefit from the transaction. The notice to the president was held to be notice to the bank, and it was denied the right to recover the amount of the notes. While the opinion of the auditor was affirmed in a per curiam, the Supreme Court said (p. 171): "And he held that in the case of the Spring Garden National Bank the fraud of its president, in contriving and negotiating the fraudulent paper for his own personal use, was with knowledge of the bank, imputed it is true, but correctly imputed, to his bank, and the paper thus held created no liability on the part of the Cracker Company. In these several findings we concur." Many of the same authorities relied upon here were relied upon by the appellant in that case.

The case of Western Savings Bank v. Sauers, 243 Pa. 561, 562, 90 Atl. 347, is another case in which a depositor was imposed upon by the acting agent of

a bank. The court there said: "This action is upon his endorsement of that note, but, as he was induced to endorse it through a bald and substantial fraud, practiced upon him by the representative of the bank, his endorsement created no liability, and the judgment for the defendant non obstante veredicto, having been properly entered, is now affirmed."

The position of the appellant is that the bank, although payee in the note, is a holder in due course; that Sheely, in raising the note, was acting as the agent of defendant and not as agent (cashier) of the plaintiff; and that the notice of the fraud could not be imputed to the bank under such circumstances. In support of its first contention, appellant refers to the case of Johnston v. Knipe, 260 Pa. 504, 105 Atl. 705. That case determines conclusively that a payee of a promissory note may become a holder in due course under the Negotiable Instruments Act of May 16, 1901, P. L. 194. It is a non sequitur that all payees are holders in due course. We must still have recourse to the Negotiable Instruments Act for the definition of a holder in due course. That Act requires (Sec. 52; 56 P. S. 132) that such a holder shall have taken the note "in good faith and for value", and that the holder "had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." As we have shown, there is here both actual notice to the bank and the failure of consideration.

The appellant next contends that the cashier was the agent of the defendant and not of the bank in filling the blanks in the note. See Wiley v. Moor, 17 S. & R. 438, 439; Worrall v. Gheen, 39 Pa. 388, 396; Simpson v. Bovard, 74 Pa. 351, 361; Hepler v. Savings Bank, 97 Pa. 420; Wessell v. Glenn, 108 Pa. 104, 111; Howie v. Lewis, 14 Pa. Superior Ct. 232, 242. The fraud was not completed or finally consummated by the filling in of the blanks. Accepting appellant's con-

tention for the sake of argument, Sheely ceased to be the agent of Miss Speck and was the sole representative of the bank at least at the moment the blanks were filled. If the connection of the cashier with the transaction had ended here, there would have been no controversy between the bank and the defendant; but the cashier while in the banking house engaged in the plaintiff's business as its sole agent, had possession of this note and instead of paying the proceeds or passing the credit to the defendant, or using it for her benefit or by her direction, used such credit to cover up his irregularities in the bank. Here he was beyond question acting solely for the bank and as the bank.

Again, this matter is covered by Section 14 of the Negotiable Instruments Act (56 P. S. 19) which provides: "Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper, delivered by the person making the signature in order that the paper may be converted into a negotiable instrument, operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time." By the very terms of this Act, the bank was required to fill up the note strictly in accordance with the authority given, and as it was not a holder in due course, its title fails.

Finally, appellant relies upon the principle stated

in the case of Gunster v. Scranton, supra, where it is said (p. 337): "The rule that knowledge or notice on the part of the agent is to be treated as notice to the principal is founded on the duty of the agent to communicate all material information to his principal, and the presumption that he has done so. But legal presumptions ought to be logical inferences from the natural and usual conduct of men under the circumstances. But no agent who is acting in his own antagonistic interest or who is about to commit a fraud by which his principal will be affected does in fact inform the latter, and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature." In that very opinion, the court distinguishes the principle upon which we base this decision. It is not applicable for two reasons, to wit, (1) there is a failure of consideration, and (2) the notice here was not a notice that it is necessary to impute to the corporation, but arose by reason of the fact that the bank in the only way in which it could act was perpetrating a fraud itself and endeavoring to retain an advantage. As was there said by Mr. Justice MITCHELL: "The facts show that the bank was endeavoring to retain an advantage and assert a claim founded on a fraud in which its own officers had participated, and the case therefore comes plainly within the rule adopted in Atlantic Mills v. Indian Orchard Mills, 147 Mass. 273, supra, which we think entirely sound."

The facts in the Gunster case are clearly distinguishable from those in the instant case. In the Gunster case, the same person was vice-president of the bank and treasurer of the defendant company. The proceeds of the notes of the defendant were deposited in the bank to the credit of the defendant company and were withdrawn from the bank upon the check of the defendant, signed by the officer common to both

corporations; while in our case, the proceeds of the note never passed into the possession of the defendant, but the credit was handled solely by the cashier as the agent of the bank.

The judgment of the court below is affirmed.