## Johns Hopkins *vs.* William Boyd.

A promissory note, signed in the *firm name* by one of two partners, was received by the plaintiff before maturity, in due course of business, without notice that it was not given for a *partnership transaction*, and without the assent of the other partner.  At maturity the note was protested, and the plaintiff took therefor three notes in renewal, signed by the same partner, in the *firm name*.  At the time these renewals were given, the plaintiff *had notice* that the original note was given without the co-partner's knowledge, and not for a partnership transaction.  Held:

That the plaintiff could recover on the renewals; he took a *good title* when he obtained the *original note*, and to deny the right of the partner who signed the firm name to it, to renew it, *during the existence of the partnership*, would be to render such title valueless.

After dissolution, one partner cannot bind his late partner by a new contract, even when the consideration is a debt of the firm, but *during the existence of the partnership*, he can bind his co-partner by signing the name of the firm to negotiable paper.

APPEAL from the Court of Common Pleas.

*Assumpsit* brought by the appellant, as endorsee, against the appellee and William Rogers, partners, trading under the firm name of "Rogers & Boyd," as makers of the four several promissory notes mentioned in the opinion of this court. The declaration also contained an *insimul computassent* count, and the common money counts. The defendants severed in their pleas, each pleading *non assumpsit.*

*Exception.* The plaintiff having given notice at the bar, during the trial, to produce the note for $364.26, dated the 24th of May 1851, proved, by *Bowerman,* that before the 27th of November 1851, the plaintiff discounted, for value, that note which was signed "Rogers & Boyd," payable, at six months, to the order of Simms, by whom it was endorsed, before reaching the hands of the plaintiff; that it was placed in the Merchants Bank for collection, and upon *its* maturity, on the 27th of November 1851, was protested for non-payment, and a day or two thereafter, witness, as clerk of the plaintiff, took it from the bank to the plaintiff's counting room, and on the 31st of December 1851, plaintiff instructed witness to take for it three others, at two, four and six months, and witness accordingly drew three notes of that date, and took them, together with the original note, by direction of the plaintiff, to the place of business of Rogers & Boyd, to get them executed in *renewal* of said original note, and they were there signed by Rogers, in the name of the firm; that the plaintiff did not tell witness specially to see Rogers only, witness understood that the renewed notes were to be signed as the old one was, in the firm name, and if he had seen Boyd there, he would have applied to either; that Simms, to whose order these renewed notes were drawn, was not there to endorse them, and witness brought all four of the notes to plaintiff's counting-room, where Simms, in a day or two afterwards, called and endorsed the renewals, and witness either *delivered*

*the original note* to him, or took it to the store of Rogers & Boyd and *surrendered it*. On cross-examination, this witness proved that Boyd was not at the store of the firm when witness went there, and that Rogers was not with Simms when the latter came to endorse the renewal notes, and that witness did not hear a conversation between Rogers, Simms and the plaintiff, which he knows took place in the plaintiff's counting-room on the morning of the 31st of December 1851, before the plaintiff gave witness the above directions in regard to the renewal notes.

The defendant, Boyd, then proved by Simms, that Rogers called on witness, on the 31st of December 1851, to go with him to the counting-room of the plaintiff, to try and get the note for $364.26, which witness had endorsed, renewed; that he accordingly went, and Rogers and himself there saw and conversed with the plaintiff; that there was a good deal of conversation between the three, Rogers doing the most of it, as he was most interested; that Rogers then and there stated to the plaintiff, that the note for $364.26 had been given without his co-partner's (Boyd's) knowledge, and was not for a partnership transaction, and that he, Rogers, wished the plaintiff to take three notes, which Rogers promised to pay; that plaintiff said, in reply, it was a matter of indifference to him whether Rogers' partner knew of the note or not. This witness further proved the signature of the firm name to the three notes of December 31st, to be in Rogers' handwriting, and that Rogers mostly signed the notes of the firm; that a day or two after the above conversation, witness, at the instance of Rogers, called at the plaintiff's counting-room, and endorsed the three renewal notes; that witness thinks the original note was an accommodation note to some party, and the signature of the firm name to it was made by Rogers, and that this original note was not surrendered to him when he endorsed the renewals. On cross-examination, this witness proved that plaintiff said to himself and Rogers, when told by the latter that the $364.26 note had been given without the partner, Boyd's knowledge: " Well, what is that to me, I gave value for it in the course of my business, and took it on the faith of

the co-partnership name, and with no notice that it had been given without Boyd's knowledge or assent, and not for a partnership transaction;" that these may not have been his exact words, but the plaintiff spoke to that effect; that after these remarks, it was agreed that the three notes, dated the 31st of December, should be given as they now are. The defendant further proved by another witness, Sutton, that he knows that the $364.26 note was not given for the partnership business of Rogers & Boyd, but as an accommodation note for witness. The plaintiff then asked two instructions to the jury, in substance as follows:

1st. That if the jury find, from the evidence, that the plaintiff discounted for value, before its maturity, the note for $364.26, which had been made by Rogers, in the name of the firm of Rogers & Boyd, he being a partner with Boyd in said firm, payable to the order of William Simms, and by him endorsed, and that Rogers mostly signed the notes of said firm, and that plaintiff took said note without notice that it had not been given for a partnership transaction, and without notice that it had been given without Boyd's assent, and that said note matured on the 27th of November 1851, that then said note was binding on the firm of Rogers & Boyd, in favor of the plaintiff, though given originally without the assent or knowledge of Boyd, if the jury find the other facts which may be assumed in this prayer.

2nd. If the jury find the facts stated and assumed in the first prayer, and that the note for $364.26 was duly presented for payment, and protested for non-payment, and that on or about the 31st of December 1851, Rogers, in company with the endorser, Simms, went to the counting-house of the plaintiff to get said note renewed, and that then Rogers told the plaintiff that said note had been given without Boyd's knowledge or assent, and not for a partnership transaction, and that then plaintiff stated substantially to Rogers and Simms, that this fact was a matter of indifference to him, as he had taken the note, without notice of such fact, in the course of his business, on the faith of the co-partnership, for value, and before its maturity, and that forthwith, after these remarks of the

plaintiff, it was agreed that the three notes given in evidence, bearing date on the 31st of December 1851, should be made in the name of the firm of Rogers & Boyd, and that accordingly the plaintiff instructed the witness, Bowerman, to take said note for $364.26 to the store of Rogers & Boyd, on that day, and get the agreed renewal in the name of the firm of Rogers & Boyd, and that Bowerman did take said note to said store, and also the said notes dated the 31st of December 1851, which were then signed by Rogers, in the name of the firm of Rogers & Boyd, payable to the order of Simms, and that Bowerman brought all four of the notes to the counting-room of the plaintiff, and that in a day or so afterwards, Simms came there and endorsed those dated the 31st of December 1851, and that then said note for $364.26 was carried by Bowerman to the store of Rogers & Boyd, and surrendered; and if the jury find all other facts assumed in this prayer, then the plaintiff is entitled to recover.

The defendant, Boyd, then asked two instructions to the jury, in substance as follows:

1st. That if the jury find, from the evidence, that the note spoken of by Bowerman, as becoming due on the 27th of November 1851, was given by Rogers, without the knowledge of Boyd, in the partnership name of Rogers & Boyd, and that said note was not made or negotiated for the use of the partnership, or for any matter springing out of, or connected with, the business of said partnership, and that before giving the three notes, dated the 31st of December 1851, the plaintiff had express notice of these facts; and that the plaintiff, on the 31st of December 1851, was requested by Rogers to accept and receive the three notes of that date in payment of said former note, which became due on the 27th of November 1851, and that plaintiff, assenting to such request, did agree with Rogers to accept said three notes in payment and extinguishment of the said note which so became due, and that the plaintiff, before receiving said three notes, had notice that Rogers designed to conceal from the knowledge of Boyd that the said note which had so became due, had been given by him, Rogers, and also to conceal from the knowledge of Boyd

the fact that said three notes were intended to be given by him, Rogers, in payment and extinguishment of said former note, and that the plaintiff did not carry notice of these several facts, or of any of them, to Boyd, then the plaintiff is not entitled to recover the amount of said three notes, as against Boyd, on the issue joined on his plea.

2nd. If the jury find that the note spoken of by Bowerman as a note which became due on the 27th of November, was executed by Rogers in fraud of the partnership of Rogers & Boyd, and without the knowledge of Boyd, and that before the execution of the three notes, dated 31st of December 1851, the plaintiff had notice of such fraud on the part of Rogers, and of such want of knowledge on the part of Boyd, and that said three notes were executed and delivered by Rogers to the plaintiff, without the knowledge or assent of Boyd, then the plaintiff is not entitled to recover on said three notes, as against Boyd, on the issue joined on his plea.

The court (MARSHALL, J.,) granted the plaintiff's first prayer, but refused his second, and granted both of the defendant's prayers, to which refusal, and the granting of the defendant's prayers, the plaintiff excepted.

On the issue joined between the plaintiff and Rogers, the verdict and judgment were in favor of the plaintiff, but upon the issue joined between the plaintiff and Boyd, the verdict and judgment were in favor of the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*William H. Norris* for the appellant, argued:

1st. That the plaintiff's second prayer should have been granted, 1st. Because there is no evidence in the cause inconsistent with the hypothesis of this prayer; and 2nd. Because if the facts of the prayer had been found by the jury the plaintiff was entitled to recover. A party holding a valid security *in his hands* is not prevented from taking a renewal of it by the knowledge that it would not have been valid to him had

the facts connected with its issue been known to him when he received it, and especially when no party in interest is prejudiced by the renewal. As respects him it *is* a valid security. And if, from any technical reason, the plaintiff could not have recovered on the renewals, he was at liberty, under the circumstances, to recover on the original $364.26 note, as deceptively obtained from the plaintiff, *or* he could have recovered on the *common counts,* as there was no evidence that notes *not valid as partnership obligations* had been agreed to be taken in renewal by the plaintiff. 3 *G. & J.,* 450, *Bosley vs. Ches. Insurance Company.* 7 *H. & J.,* 295, *Riggin vs. Patapsco Ins. Co.* 11 *G. & J.,* 13, *Moale vs. Hollins.* 2 *Gill,* 133, *Tiffany vs. Savage.* 4 *Do.,* 421, *Stockton vs. Frey.* 4 *Md. Rep.,* 288, *Thruston vs. Lloyd.* 6 *Do.,* 151, *Key vs. Dent, Adm'r of Wood.* 7 *Do.,* 366, *McTavish vs. Carroll. Collier on Part.,* secs. 494, 447, 492, 195, 384, 386. *Chitty on Bills,* 265, 125, *(note s,)* 180. 2 *G. & J.,* 494, *Glenn vs. Smith.* 6 *Do.,* 71, *Crawford vs. Berry.* 3 *Do.,* 374, *Penn vs. Flack & Cooley.* 2 *H. & G.,* 274, *Neal vs. Fisher.* 7 *H. & J.,* 35, *Bowers vs. The State, use of Dryden.* 7 *G. & J.,* 474, *Lancaster vs. Baltzell.* 5 *Gill,* 436, *Larrabee vs. Talbott.* 7 *Do.,* 65, *Doremus vs. McCormick.* 9 *Do.,* 145, *Gwynn vs. Lee.* 15 *Eng. Law & Eq. Rep.,* 71, *Harris vs. Farwell.* 35 *Eng. Law & Eq. Rep.,* 165, *Ex-parte Graham.* 9 *Gill,* 348, *Williams vs. Hall.* 5 *Md. Rep.,* 397, *Yates vs. Donaldson. Gow on Part.,* 48.

2nd. That both the defendants' prayers should have been rejected, 1st. Because there was no evidence to sustain them, there being no proof that the notes of the 31st of December 1851, were executed and delivered without Boyd's knowledge or assent. Nor of any agreement to receive these notes in full payment or extinguishment of the original one, nor of any design on the part of the plaintiff to collude with Rogers to defraud his co-partner, Boyd. 4 *Md. Rep.,* 288, *Thruston vs. Lloyd.* 5 *H. & J.,* 32, *Mercer vs. Walmsley.* 2 *Md. Rep.,* 234, *Merchants Mutual Ins. Co. vs. Wilson.* 7 *H. & J.,* 295, *Riggin vs. Patapsco Ins. Co.* 6 *Md. Rep.,* 151, *Key vs. Dent. Ibid.,* 465, *Plank Road Co. vs. Bruce.* 2 *H. &*

*G.*, 411, *Smith vs. Edwards.* 5 *G. & J.*, 304, *Davis vs. Calvert.* 5 *Md. Rep.*, 397, *Yates vs. Donaldson.* *Ibid.*, 444, *Stewart vs. Spedden.* 7 *H. & J.*, 220, *Barger vs. Collins.* 9 *Gill*, 136, *Anderson vs. Garrett.* 8 *Md. Rep.*, 337, *Corner vs. Pendleton.* 2nd. Because these prayers are not law, for the reasons and by force of the authorities above cited under the first point.

*William Schley* for the appellee, argued:

1st. Conceding the law of the plaintiff's first prayer, and that there was evidence to support its hypothesis, still it does not follow, as a necessary legal consequence, because the $346.26 note was, *under the circumstances*, in the hands of the plaintiff, *as between him and Boyd*, a valid and binding engagement of the *firm*, that *therefore* the three notes received therefor are, as *between the plaintiff and Boyd*, valid and binding engagements of the *firm*. The first note was received by the plaintiff in the regular course of business, *bona fide*, *without notice*, and on the faith of the partnership name, but not so as to the *three* other notes. These, though given on account of a partnership *liability*, were not given in the *business* of the partnership, were not received by the plaintiff in the regular course of his business, nor as a *bona fide* purchaser without notice, but were received with express notice of the fraud of Rogers in issuing the original note, and if there was not positive proof there were strong grounds to lead the plaintiff to suspect that the object of Rogers was to conceal the transaction from the present knowledge of Boyd, and by getting *time*, at the partnership risk, to pay the money, if he could, out of his separate means.

2nd. *As between Rogers and Boyd*, the issuing of the original note was a fraud on Boyd. It was, therefore, *as between them*, the duty of the former to take up the note *at once*, in exoneration of the partnership liability. *As between them* giving new notes was equally a fraud on Boyd, because it *continued* the partnership liability, and was itself an act of misconduct intended to cover up and conceal an antecedent act of misconduct.

3rd. The plaintiff, having knowledge of the circumstances, cannot be deemed a *bona fide* holder of the new notes. Even if his conduct was prompted by motives of kindness to Rogers, and a desire to afford him a chance to pay off the debt, in instalments, out of his private means, still the law must denounce the act as a fraud upon Boyd. The plaintiff ought to have enforced his right to claim payment of the *first* note, or in taking new notes he ought to have secured the assent of Boyd He had no right, either from a desire to facilitate the collection of his debt, or from feelings of kindness towards Rogers, to continue Boyd's liability, without his assent, upon a transaction fraudulent in its origin, and of which he knew that Boyd was ignorant, *especially* as the plaintiff had reasonable grounds to suppose, from the conversation proved by Simms, that it was the object of Rogers to *keep* Boyd in ignorance of the transaction. In support of these views see *Story on Part.*, secs. 128, 130, 131. *Gow on Part.*, 48, 50. 4 *How.*, 404, *Smyth vs. Strader.*

4th. The declaration counts upon the *original* note and *also* upon the new notes. The plaintiff's second prayer asserts, that if the jury find the facts stated in it, the plaintiff *"is entitled to recover,"* without saying upon *which* note or notes, and for this reason is *defective*. When instructions are asked they should be precise to a particular intent. 15 *Pet.*, 377, *United States vs. Bank of Metropolis*. Again, this prayer does not embrace, as part of its hypothesis, the question of *bona fides* on the part of the plaintiff, while both of the defendant's prayers make it material. The defendant's first prayer raises the question as to the *extinguishment* of the original note. This depends upon the *intention* of the parties, and it was put to the jury by this prayer, whether the giving *up of the old note*, under the circumstances, was an extinguishment of it or not. *Story on Prom. Notes, sec.* 438. 1 *Parson's on Cont.*, 365, 368, 369. 8 *Md. Rep.*, 343, *Corner vs. Pendleton.* 10 *Do.*, 27, *Berry vs. Griffin.*

Le Grand, C. J., delivered the following opinion in the case:

This was an action of *assumpsit.* In addition to the common money counts the declaration contained special counts on several promissory notes, one dated the 24th day of May 1851, drawn to the order of William Simms, and by him endorsed for $364.26, payable six months after date. The other special counts are respectively on three notes, dated the 31st day of December 1851, each, made by the appellees and endorsed by William Simms; one for $125.24, payable sixty days after date; one for $124.45, payable four months after date, and the other for $125.50, payable six months after date. The action was brought by the appellant, as endorsee, against the appellees, as makers of each and every of these notes. The only facts in the case, as exhibited by the record, necessary to be noticed, may be thus stated:

Before maturity of the note dated the 24th day of May 1851, it was endorsed by the payee, Simms, to the appellant, and by the latter deposited for collection in the Merchants Bank of Baltimore. It became due on the 27th day of November 1851, and being unpaid, was protested for non-payment. On the 31st day of December following the appellant directed the witness, Bowerman, to take for the note the three others already noticed and mentioned in the declaration. These notes were intended, (interest being included,) as a *renewal* of the note which had been protested. Before they were signed and delivered to the appellant conversations took place between him and Rogers, one of the appellees, in the presence of others; the only part of which it is material to this case to notice, is the following: Rogers said the note for $364.26 had been given without his co-partner's knowledge, and was not for a partnership transaction; and that he, Rogers, wished the plaintiff to take three notes which Rogers promised to pay. The plaintiff, Hopkins, said in reply, that it was a matter of indifference to him, whether Rogers' partner knew of the $364.26 note or not, that he had given value for it in the course of business, and took it on the faith of the co-partnership name, and with no notice that it had been given without Boyd's knowledge or assent, and not for a partnership transaction.

On this state of facts four instructions were asked of the

court, two on the part of the appellant, and two on the part of the appellee, Boyd, who had severed in his pleading and defence. The latter and the first on the part of the appellant were granted; the other prayer was rejected. In the granting of the two instructions on behalf of Boyd, and the rejection of the second prayer of the appellant, we are of opinion the court erred.

The first prayer of the appellant, which was granted by the court, merely asserted the general doctrine, (the correctness of which we understood the counsel for the appellee, Boyd, to concede,) that if the jury should find from the evidence, that the appellant discounted for value, before its maturity, the note for $364.26, that had been made by Rogers in the name of the firm of Rogers and Boyd, he being a partner with Boyd in the same firm, and mostly signed the notes of said firm, and the payee of said note endorsed the same to the appellant, who took it without knowledge that it had not been given for a partnership transaction, and without knowledge that it had been given without the assent of Boyd, yet, notwithstanding this want of knowledge and assent of Boyd, said note was binding on the firm.

Although, *after* dissolution of a partnership, one partner cannot, by a new contract, in the name of the firm, bind his late partner, even when the consideration is a debt of the firm, (8 *Md. Rep.*, 403,) yet, that *during* the existence of the co-partnership he can bind his co-partner, by signing the name of the firm to negotiable paper, is a proposition too plain to require citations to sustain it, but if any were required the following are directly to the point. *Manning & Co. vs. Hays*, 6 *Md. Rep.*, 5. *Boyd vs. McCann*, 10 *Md. Rep.*, 118.

This being so, the question arises, did the court properly reject the second prayer of the appellant? We think not. It reasserts the proposition contained in the first prayer, adding thereto the circumstances connected with the non-payment and protest of the original note, and the giving of the three others in renewal thereof, and concludes by asking the court to instruct the jury, if they should believe the facts so set out in the prayer, that then the plaintiff is entitled to recover. The

evidence shows that the three notes, which bear date the 31st day of December 1851, were given as a renewal of the one of the 24th day of May preceding.

It is a clear proposition, that unless the taking by the appellant of these last notes was an *extinguishment* of the original note, then there was no payment of it, and a recovery on it can be had in this action, it being specially declared upon. The taking from the same party of a security of no higher grade or dignity, for another, never works an extinguishment or amounts to a payment, but leaves the original obligation in full force, the holder being free to sue either on the original or substituted one. The following authorities are abundantly full on this point. *Glenn vs. Smith*, 2 G. & J., 512. *Maryland & N. York Coal & Iron Co. vs. Wingert*, 8 Gill, 177. *Berry vs. Griffin*, 10 Md. Rep., 27.

There was no evidence of any agreement to receive the three notes in full payment and extinguishment of the original one; so far from it, it appears from the evidence of the witness, Simms, (a witness on the part of Boyd,) that the proposition was to give the notes as a *renewal.* The prayer should have been granted; the facts which it accumulated on those set out in the first prayer, were altogether supererogatory. Had the first prayer concluded with an instruction of the right of the plaintiff to recover, it would have contained the whole law of the case. These views, of course, dispose of the prayers of the appellee, Boyd. It is not, however, improper to add, that there is not a particle of evidence disclosed by the record, from which the jury could rightly infer the payment and extinguishment of the original note, nor of any design on the part of the appellant to collude with Rogers to defraud his co-partner, Boyd, facts which the prayers submitted on his behalf ask the jury to find.

The plaintiff had a right to *elect* to maintain his action, either on the original note or the renewals, or on the *insimul computassent* count.

So far, what has been stated is the individual opinion of the judge who delivers it. But the whole court are of the opinion that the plaintiff may recover on the renewals; that for the

reasons already assigned, the appellant took a good title when he obtained possession of the original note, and to deny the right of Rogers, during the existence of the co-partnership, to renew it, would be to render a perfect title valueless.

*Judgment reversed, and procedendo awarded.*