[No. 18715. Department One. January 30, 1925.]

NORTHERN PACIFIC RAILWAY COMPANY *et al., Respondents,* v. SPOKANE VALLEY GROWERS' UNION, *Appellant.*[1]

BILLS AND NOTES (73-3)—CHECKS—EXECUTION IN BLANK—BONA FIDE PURCHASERS—DEFENSES—FORGERY—ESTOPPEL. Where officers of a Union signed checks in blank, and placed them within access of a clerk whose usual duty was to write all the checks except the signatures, they were guilty of such negligence as to render the Union liable thereon to bona fide holders for value, where the clerk filled out the checks as payable to himself and put them in circulation without authority, in view of Rem. Comp. Stat., § 3407, providing that a valid delivery is presumed where the instrument is in the hands of a holder in due course, and Id., § 3414, providing that the defense of forgery of the "signature" shall not prevail if the party against whom liability is sought is estopped to show forgery or want of authority.

Appeal from judgments of the superior court for Spokane county, Blake, J., entered December 8, 1923, distributing to cross-complainants a deposit in court

[1]Reported in 232 Pac. 691.

and awarding personal judgments against defendant, after a trial on the merits to the court. Affirmed.

*Tustin & Chandler*, for appellant.

*Cannon & McKevitt* and *D. R. Glasgow*, for respondents and cross-complainants.

PARKER, J.—The sheriff of Spokane county, having in his hands money amounting to $1,149.90, to which he makes no claim, being a mere stakeholder thereof, and being advised that the defendants, railway company and others, might have claims of interest therein, commenced this action in the superior court for Spokane county to have their interests therein determined and himself relieved from responsibility with reference thereto, at the same time depositing the money with the clerk of the superior court to abide such determination. The $1,149.90 was by the sheriff taken from the person of one Paulson, a bookkeeping employee of the defendant, Spokane Valley Growers' Union, upon his arrest; that sum and an additional amount having been unlawfully obtained by him from the railway company and others upon checks of the union. Paulson voluntarily surrendered to the sheriff the $1,149.90, consenting that it be applied towards the payment of the checks as the rights of the holders may appear.

The railway company and four others from whom the money had been so unlawfully obtained in various sums, filed their cross-complaints against the defendant union, praying for judgments against the union in the respective amounts which had been obtained by Paulson from them upon the checks and for the application of the $1,149.90 deposited with the clerk of the superior court towards the payment of such judgments. The defendant union answered these cross-

complaints upon the merits, resisting the claims for personal judgment made against it, though not resisting distribution of the $1,149.90 to the cross-complainants deposited by the sheriff with the clerk of the superior court. The defendant union did not challenge the jurisdiction of the court to try the question of its liability upon the checks and render judgments accordingly in this action. A trial upon the merits resulted in the rendering of judgments distributing the fund among the cross-complainants in proportion as their rights appeared, and awarding personal judgments in favor of each of them against the union for the respective balances so found to be due them upon the checks. From this disposition of the cause the union has appealed to this court, challenging the correctness of the judgments in so far as recovery was thereby awarded against it.

In July, 1923, and for some time prior thereto, Paulson was and had been in the employ of appellant union as a bookkeeper, having access to its books and records. Appellant was at that time handling a large amount of berries for its various members, and was somewhat behind in its computing and remitting the amounts due to them. The rules of appellant required its checks upon its bank account to be signed by Peirce, its president, and Nelson, its treasurer. About the middle of July, 1923, in order to catch up with the making of such remittances, it was agreed between these two officers and the bookkeepers of appellant that they would meet at the office of appellant on the following Sunday and compute the amounts due its several members and make remittances accordingly. In order to expedite the contemplated work, as it is claimed, Peirce and Nelson, as president and treasurer, a few days prior to the contemplated Sunday meeting, signed

in blank an entire book of checks of appellant upon its bank account. This was done in contemplation of the possibility that one of them might not be present at the Sunday meeting. The book of signed checks was then placed by them in the office safe of appellant, Paulson having as free access to the book of signed blank checks as the officers themselves.

Thereafter on July 18th, before the contemplated Sunday meeting, Paulson took from the book several of the signed blank checks, filled in the blank spaces his own name in each of them as payee and the amounts, aggregating considerably more than $1,149.90 above mentioned. He then presented these checks to, and received cash in the amounts of their full face value from, the several respondents respectively; they each then becoming innocent holders in good faith for full value of the checks so received and cashed by them. Soon thereafter Paulson's wrongdoing in connection with the checks was discovered and he was arrested, when there was taken from his person by the sheriff the $1,149.90. Paulson thereupon voluntarily signed a paper stating in substance that this money was proceeds of the checks so cashed by the respondents, and consenting that it should be returned to those from whom he had so received it. So far we have related the facts in substance as they are related by appellant's own counsel in their brief. We note, however, another fact which they seem to have overlooked. Peirce, the president, testified with reference to the duties of Paulson as bookkeeper that "he as a rule wrote out all the checks except the signature, because that was a part of his duties."

It is plain that all of these checks, when received by respondents, were complete and did not upon their face indicate in the slightest degree that they were other than the genuine checks of appellant, were signed

by the genuine signature of appellant by its officers duly authorized to sign and issue such checks, and that respondents paid the full face value of each of the checks when acquiring them. Counsel for appellant contend that, since the checks were completed by filling in the amount and the name of the payee in each and put into circulation by Paulson without authority, they were void and of no effect as evidencing obligations of appellant, though they have fallen into the hands of respondents in due course as innocent holders. It is the settled law of this state that:

"Where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed." Rem. Comp. Stat., § 3407.

See, also, *Angus v. Downs*, 85 Wash. 75, 147 Pac. 630.

So, for purposes of our present inquiry, we have here genuine checks of appellant as to signatures, and also as to delivery, in so far as the checks were capable of delivery for appellant. Thus our inquiry becomes limited to the question of appellant's becoming bound to respondents as innocent holders in due course by the acts of Paulson in completing the checks; that is, in filling in the amount and the name of the payee in each. We have seen that Paulson "as a rule wrote out all the checks except the signature, because that was a part of his duties;" that he was one of appellant's bookkeepers, having as free access to the safe and the signed blank checks as the officers themselves had; and that among his duties was that of aiding in computing and determining the amounts for which such checks were given.

Were not appellant's officers guilty of such negligence in signing the blank checks and leaving them in the safe to which Paulson had access as much as they had, in other words, in placing the signed blank

checks as much in Paulson's possession as in their own possession, as to now estop appellant from asserting that the checks were then drawn and put in circulation without its authority? We think this inquiry must be answered in the affirmative. The decisions of the courts, it must be conceded, are seemingly not in harmony touching the liability of the signer of blank checks which have found their way into the hands of innocent holders under circumstances more or less similar to those here shown. We think, however, a considerable portion of such seeming want of harmony has been the result of the varying facts of the particular cases as much or more than the want of harmony in views as to the fundamental principles brought to the aid of the solution of the problem in each particular case.

In *Snodgrass v. Sweetser,* 15 Ind. App. 682, 44 N. E. 648, there was drawn in question the liability of the signer, Snodgrass, by her agent, of a blank check upon her bank account. After being so signed with other blank checks in a book, it was left upon or in a desk in her agent's office, in any event not under lock. It was secretly taken therefrom by a stranger, the amount and payee being thereafter filled in; it being put in circulation and finding its way to the bank and paid in due course, the bank becoming the holder, or rather the payor, in due course and innocently. Holding that Snodgrass became liable upon such check, in view of the manner in which it was completed and put in circulation, as a result of the negligence of herself and her agent, Justice Ross, speaking for the court, said:

"When the appellant, Snodgrass, signed and delivered to her agent, Stillwell, the blank checks, she was bound to know that they were liable to be lost or stolen, and that, if they fell into the hands of unscrupulous or dishonest persons, might be filled in with the name of

a payee and a definite sum, and presented to the appellees for payment. It is well settled, as a general rule, that the payment of a forged check, draft, or order must be borne by the party paying it. But, when the party disavowing the obligation has been guilty of negligence which is the immediate and direct cause of misleading the payor into paying it, he must reimburse such payor, for his act of omission was the cause that induced its payment. It was appellant's own negligence, whether her own individually or that of her. agent, that caused the appellees to part with their money, and she should reimburse them for what she, by her negligence, induced or led them to pay out. Reason and principle require that if one person, by his negligence, causes or induces another to pay out money for his benefit, he should reimburse such person for the amount so paid out. This rule is especially applicable as between the parties to this action, as disclosed by the facts found by the court. By her signature to the check she in effect vouched for its genuineness, and she is estopped, as between herself and the appellees, by reason of her negligence, from setting up that it was stolen, and the name of the payee and the amount inserted without her knowledge or consent. It was her own negligence that brought about the loss and she must suffer for it."

The decision of this court in *Ladd & Tilton Bank v. Small*, 126 Wash. 8, 216 Pac. 862, while not directly in point, is in harmony with and strongly suggests the soundness of these views so expressed by the Indiana court. In § 3414, Rem. Comp. Stat. [P. C. § 4094], a portion of our negotiable instrument law, we read:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such

right, is precluded from setting up the forgery or want of authority."

This is the only section of our statute relating to the effect of forged negotiable instruments, in so far as forgery touches the question of liability of the purported maker of the instrument. It is to be noted that the forgery there mentioned is only the forgery of the signature; and further, that even as to that, the purported maker may be estopped from asserting such forgery as a defense to his liability upon the instrument. This strongly suggests that, as to other acts of forgery, such as falsely filling in a blank check actually signed by the purported maker, estoppel will be more readily sustained as against a defense of forgery in other respects set up by the purported maker of the instrument.

We have read the decisions cited by counsel upon both sides of this controversy thought to have a bearing upon it, and are led to the conclusion, as stated in the text of 3 R. C. L. 1025, that "sound reason would seem to require the question to be resolved with a view to the facts of the particular case and the principles of negligence." As to whether or not the negligence of the signer and purported maker of the negotiable instrument is such as to estop the purported maker of the instrument from setting up forgery or want of authority on the part of the one who completes and actually issues the instrument, as in this case, we think ordinarily becomes a mixed question of law and fact; indeed, in its last analysis, almost wholly the latter. This view finds support in *Dodd v. Dunne*, 71 Wis. 578, 37 N. W. 430, and *Robb v. Pennsylvania Co.*, 186 Pa. St. 456, 40 Atl. 969, 65 Am. St. 868, 41 L. R. A. 695. In the consideration of this particular problem we should carefully keep in mind that this is not a case of alteration of a completed instrument as involved in *Knoxville*

*Nat. Bank v. Clark,* 51 Iowa 264, 1 N. W. 491; *Walsh v. Hunt,* 120 Cal. 46, 52 Pac. 115; *Critten v. Chemical Nat. Bank,* 171 N. Y. 219, 63 N. E. 969, 57 L. R. A. 529; and *National Exchange Bank of Albany v. Lester,* 194 N. Y. 461, 87 N. E. 779, 21 L. R. A. (N. S.) 402. Those cases involved alterations in instruments complete upon their face, as to which alterations the makers were in no way responsible. This is far different from the signing of a check leaving blanks to be filled without which it is manifestly upon its face not complete, as in this case. Some other contentions are made and briefly argued, but we think they are so far devoid of merit as not to call for discussion here.

The judgments of the superior court are affirmed.

TOLMAN, C. J., BRIDGES, and MAIN, JJ., concur.