## In re PURKETT, DOUGLAS & CO.
### No. 16277–H.

District Court, S. D. California, Central Division.

March 30, 1931.

Hiram E. Casey, of Los Angeles, Cal., for Wm. H. Moore, Jr., receiver.

Guy Richards Crump, of Los Angeles, Cal., for petitioner.

McAdoo, Neblett & Clagett and William H. Neblett, all of Los Angeles, Cal. (Hubert F. Laugharn, of Los Angeles, Cal., of counsel), for respondent.

HOLLZER, District Judge.

On March 11, 1931, Purkett, Douglas & Company, hereinafter referred to as petitioner, filed a voluntary petition in bankruptcy herein and was adjudged a bankrupt on said date. Practically at the same time, petitioner filed a verified petition wherein it was charged that on December 18, 1930, petitioner had executed and delivered to William H. Neblett, hereinafter referred to as respondent, a note in the sum of $50,000 with interest at 6 per cent. per annum, payable sixty days thereafter, and as security for the payment of said note had pledged with respondent bonds of the Dollar Oil Corporation, Limited, of the par value of $85,000, and in addition thereto had transferred to respondent other bonds of the Dollar Oil Corporation, Limited, of the par value of $25,-000 and also 150,000 shares of the capital stock of said last-named corporation of the par value of $1 per share, as a bonus to respondent on said loan. The said petition further charged that the transfer of said last-mentioned bonds and shares of stock to respondent was a usurious payment of interest on account of said loan, also that respondent had caused notice to be given of intention to sell, on March 11, 1931, the bonds pledged with him as aforesaid; that unless restrained from so doing, respondent would cause said bonds to be sold for a sum of money grossly disproportionate to the true value thereof and thereby would cause irreparable loss to the estate of petitioner and great injury to the creditors of petitioner.

In accordance with the prayer of said petition an order was issued by this court, restraining respondent until the further order of the court from proceeding further with any sale as pledgee of said bonds pledged as aforesaid.

On March 14, 1931, two affidavits were filed by and on behalf of respondent, one being made by respondent and the other by R. B. Powell. The denials and statements hereinafter referred to will be found contained in one or both of said affidavits. Respondent denies that any bonds or stock were received by him as a usurious payment of interest on account of said loan, or that unless restrained by this court he will cause said bonds or any of them to be sold for a sum disproportionate to the true value thereof, or that a sale thereof will cause great or irreparable loss to the bankrupt estate or any injury to the creditors of the bankrupt. In addition, it is alleged in substance that the $25,000 par value of bonds, and the 150,000 shares of stock, were transferred to the law firm of which respondent is a member in payment of services rendered by said firm in connection with the organization and the financing of the bond issue of said Dollar Oil Corporation, Limited, and in consideration of respondent going on the board of directors of said last-named corporation; also, that neither the $25,000 in bonds nor said shares of stock at any time had any market value on the open market and that a reasonable value of said bonds was between 25 per cent. and 50 per cent. of their face value and that said stock was worthless. It is further alleged that the petitioner is not insolvent and that it has concealed or disposed of $40,000 in bonds and 600,000 shares of stock in contemplation of bankruptcy.

Upon these affidavits an order was granted requiring the petitioner to show cause why the temporary restraining order issued herein should not be dissolved.

At the hearing upon said order to show cause, it was conceded that the customary practice was being followed herein with respect to the calling of a meeting of the creditors before the referee for the purpose of electing a trustee.

It is contended by respondent that this court had no jurisdiction to grant said restraining order, and hence that the same should be dissolved.

In support of this contention, respondent cites the cases of In re Rathman (C. C. A.) 183 F. 913, 915; Taubel-Scott-Kitzmiller Co. v. Fox, 264 U. S. 426, 44 S. Ct. 396, 398, 68 L. Ed. 770; and Weidhorn v. Levy, 253 U. S. 268, 40 S. Ct. 534, 64 L. Ed. 898.

In the case first cited the question presented for determination as declared in the opinion of the court was: "Has the United States District Court sitting in bankruptcy jurisdiction against the objection of a respondent who is in possession of real and personal property under a sale pursuant to a decree of a state court of foreclosure of mortgages that were made by the mortgagor more than four months before the petition in bankruptcy against him was filed, to adjudicate summarily on an order to show cause, the claim of the trustee in bankruptcy that the mortgages, the decree, and the sale were void, that the trustee recover of the respondent the value of the personal property which he purchased under the decree, and that the trustee be permitted to redeem the real estate from the mortgage and the foreclosure sale by paying the amount which the respondent paid for it at the sale less the amount which the mortgagor realized from the sale of a portion of the mortgaged property before the foreclosure sale of the balance to the respondent?"

In deciding the foregoing question in the negative, the Circuit Court of Appeals, in the course of its opinion, pointed out that the filing of a petition in bankruptcy creates no lien against parties who claim a lien upon or a title to the property of the bankrupt, "and that until the bankruptcy court by some act of one of its officers takes actual possession of the property, or makes such claimants parties to the proceeding by some order or process, or notice of the proceeding comes to them, their liens, titles, and remedies are unaffected thereby, and they are strangers to the proceeding. * * * In cases in which the bankruptcy court finds it absolutely necessary so to do for the preservation of the estate, it may by summary proceedings take possession of the property claimed to belong to the bankrupt as his property, in whosoever's hands it may be, upon the filing of the petition in bankruptcy and before a trustee is appointed, under clause 3 of section 2 of the bankruptcy law [11 USCA § 11 (3)]."

After reviewing several decisions of the United States Supreme Court in which the rule had been announced that actual possession by the bankruptcy court is the indispensable condition of its exclusive and of its summary jurisdiction in cases of this character, the opinion proceeded as follows: "Here is the touchstone of the exclusive and of the summary jurisdiction of the bankruptcy court to determine the merits of adverse claims to liens upon and titles to property claimed to belong to the bankrupt. It is the taking possession of the property, as the property of the bankrupt, by the act of

some officer of the bankruptcy court, such as a referee, a receiver or a trustee. * * * Conceding, however, but neither deciding nor admitting, that the bankruptcy court might have enjoined the suit in the state court, might have taken the mortgaged property from the receiver of that court and have administered it, the fact remains that it did not do so, and that it and the creditors who were parties to that proceeding must have known from the bankrupt's inventory of this property of the possession and the continuing sales of this mortgaged property by the assignee and the receiver of the state court."

In Taubel-Scott-Kitzmiller Co. v. Fox, supra, the trustees in bankruptcy, by a summary proceeding before the referee, sought to have the execution lien of a certain judgment creditor declared void and to obtain possession of the property involved. Thereupon the judgment creditor appeared before the District Court, challenged the jurisdiction of the referee and the bankruptcy court, furnished substantial support for its claims, and insisted that, since the bankrupt did not have, and the bankruptcy court did not acquire, possession of the property, the execution lien and the right to possession under the levy could not be assailed by the trustees except by a plenary suit in the appropriate forum. The District Court sustained the contention of the judgment creditor and stayed the proceeding before the referee. The latter order in turn was reversed by the Circuit Court of Appeals. 286 F. 351. On a writ of certiorari the judgment rendered by the latter tribunal was reversed by the United States Supreme Court. In the course of his opinion, Mr. Justice Brandeis declared:

"Wherever the bankruptcy court had possession, it could, under the Act of 1898, as originally enacted, and can now, determine in a summary proceeding controversies involving substantial adverse claims of title under subdivision 'e' of section 67 [11 USCA § 107(e)] under subdivision 'b' of section 60 and under subdivision 'e' of section 70 [11 USCA § 96(b) and § 110(e)]. But in no case where it lacked possession, could the bankruptcy court, under the law as originally enacted, nor can it now (without consent) adjudicate in a summary proceeding the validity of a substantial adverse claim."

" * * * In this case, the sheriff had, before the filing of the petition in bankruptcy, taken exclusive possession and control of the property, and he had retained such possession and control after adjudication and the appointment of the trustees. The bankruptcy court, therefore, did not have actual possession of the res. * * * The bankruptcy court, therefore did not acquire jurisdiction over the controversy in summary proceedings. Nor did it otherwise."

In Weidhorn v. Levy, supra, the trustee in bankruptcy filed with the referee a bill in equity against certain third parties to set aside certain conveyances claimed to have been made in fraud of creditors. The grantees of these conveyances objected to the jurisdiction of the referee, but the objection was overruled. On review the District Court dismissed the bill upon the ground that the referee had exceeded his powers. 243 F. 756. Thereafter the Circuit Court of Appeals reversed the ruling of the District Court. 253 F. 28. Upon certiorari the United States Supreme Court reversed the decree of the Circuit Court of Appeals and affirmed that of the District Court. Mr. Justice Pitney, delivering the opinion of the United States Supreme Court, said in part (page 272 et seq. of 253 U. S., 40 S. Ct. 534, 536): "But in the present instance the controversy related to property not in possession or control of the court or of the bankrupt or any one representing him at the time of petition filed, and not in the court's custody at the time of the controversy, but in the actual possession of the bankrupt's brother under an adverse claim of ownership based upon conveyances made more than four months before the institution of the proceedings in bankruptcy. In order to set aside these conveyances and subject the property to the administration of the court of bankruptcy a plenary suit was necessary (Babbitt v. Dutcher, 216 U. S. 102, 113, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 96), and such was the nature of the one that was instituted. * * * By Act June 25, 1910, c. 412, § 7, 36 Stat. 838, 840, section 23b was further amended so as to confer jurisdiction upon the courts of bankruptcy without consent of the proposed defendant in suits for the recovery of property under section 70e. The present suit, being of this nature, might have been brought in the District Court, or it might have been brought in a state court having concurrent jurisdiction under section 70e as amended [11 USCA § 110(e)].

We find nothing in the provisions of the Bankruptcy Act that makes it necessary or reasonable to extend the authority and jurisdiction of the referee beyond the ordinary

administrative proceedings in bankruptcy and such controversial matters as arise therein and are in effect a part thereof, or to extend the authority of the referee under the general reference so as to include jurisdiction over an independent and plenary suit such as the one under consideration."

From an examination of the foregoing decisions, it will be seen that the primary question involved in each instance was the right of either the bankruptcy court, or the referee, to determine by summary proceeding an adverse claim of title to or lien upon property alleged to belong to the bankrupt estate, but which had not come into the possession of the court. In deciding this question, the United States Supreme Court, in the last two cases cited, and the Circuit Court of Appeals in the remaining case, held, in effect, that such a claim could not be disposed of through a summary proceeding before the referee or the bankruptcy court, without the consent of the adverse party, but, on the contrary, could be adjudicated only through a plenary action in the appropriate forum, where the general rules of pleading and practice governing the prosecution and trial of civil causes would apply.

In the case at bar, however, no such question is before us. No one is here seeking by summary proceeding to determine the claim of respondent to the securities pledged with him, or his right to sell or otherwise dispose of the same. What is here sought, and what this court has undertaken to accomplish, is to restrain the sale of said securities by respondent until the adverse claims of the respective parties can be adjudicated in a plenary suit before the appropriate forum.

It is conceded that the bonds pledged with respondent constitute part of the property or assets of the petitioner. Respondent has the possession thereof and claims the right to dispose of the same merely as a pledgee holding the bonds as security for the payment of the balance alleged to be due him upon a certain note. Likewise it cannot be disputed that, if the allegations made by the petitioner be true, it would be the duty of any trustee who may hereafter be elected for the bankrupt estate to institute a plenary suit to determine the adverse claims of the respective parties, and otherwise take all necessary steps to conserve and protect the bankrupt's property and prevent any equity therein from being dissipated or greatly reduced. Any other course would subject such trustee to severe criticism and might cause the general creditors serious loss.

In the instant case, by the issuance of its restraining order the court has undertaken, pending the election of a trustee, to preserve the status quo. Obviously, except for the restraining order, the respondent would at once proceed to sell the securities. In the latter event, there would be nothing for the trustee to seek to adjudicate, and the interests of the general creditors might be seriously damaged, if not wholly lost.

The right of the court to enjoin, pending administration in bankruptcy, the sale of property belonging to the bankrupt and claimed by a creditor as security for a debt owing to him, has long been recognized.

"It is plain that the judge of a court of bankruptcy may lawfully grant such restraining order, operative on and binding litigants in the state court, although strangers to the bankruptcy proceedings, as may be necessary for the enforcement of the provisions of the bankrupt act. This court has no hesitation in holding that express power is given by the act of Congress to courts of bankruptcy to enjoin all persons within its jurisdiction, whether litigants in a state court or elsewhere, from doing any act that will interfere with or prevent the due administration of the bankruptcy act. If this is not true, how frail and worthless is the law." In re Hornstein (D. C.) 122 F. 266, 271.

"It is claimed that such action [purchaser at a sale of judgment creditor] should proceed to judgment, and a sale of the property attached be permitted; the distribution of the proceeds only being enjoined. There is no reason or necessity for such a course. If Goldberg is adjudged a bankrupt, the trustee will take and dispose of the property. If not so adjudged, these attaching creditors will proceed with their action. The right to the injunction sought in this case is plain. * * * Indeed, the act itself suggests this as the proper remedy in such a case. Bankr. Act, § 11a [11 USCA § 29(a)]; section 67f [§ 107 (f)]; section 2 (15) [§ 11 (15)]." In re Goldberg (D. C.) 117 F. 692, 695.

"The filing of a petition in bankruptcy is in substance and effect an attachment and an injunction, and it places the property of the bankrupt constructively in the custody of the court of bankruptcy. Loveland on Bankruptcy, § 150; In re Weinger, Bergman & Co. (D. C.) 126 F. 875. * * * It is true that the bankruptcy act provides that liens such as the lienholders had under the

trust deeds in this case shall not be affected by bankruptcy, but that is far from saying that such lienholders may, after the commencement of proceedings in bankruptcy against the debtor, proceed to enforce their liens or contracts in the manner prescribed in the instruments which create them; and this is true whether such lien is an ordinary mortgage, or a deed of trust with provision for a strict foreclosure by a notice and sale. The provision of the bankruptcy act that such a lien shall not be affected by the bankruptcy proceedings has reference only to the validity of the lienholder's contract. It does not have reference to his remedy to enforce his right. The remedy may be altered without impairing the obligation of his contract, so long as an equally efficient and adequate remedy is substituted. Every one who takes a mortgage, or deed of trust intended as a mortgage, takes it subject to the contingency that proceedings in bankruptcy against his mortgagor may deprive him of the specific remedy which is provided for in his contract. * * * The decision in Re Browne [104 F. 762] may be accepted as authority for the proposition that a District Court will not interfere with a sale by a pledgee of the thing pledged, under the power of sale given by the terms of his contract, *when there is no claim that such power is exercised in a fraudulent or oppressive manner.* (Emphasis ours.) In re Jersey Island Packing Co. (C. C. A.) 138 F. 625, 627, 628, 2 L. R. A. (N. S.) 560.

"Secured creditors may be enjoined from selling out their securities even though by the terms of the agreement of pledge they might have such remedy, although, where sale by the pledgee is authorized by the terms of the agreement of pledge, injunction would be granted only in cases of oppression or fraud." Remington on Bankruptcy (2nd Ed.) vol. 1, § 365.

"The Court will interfere with or declare void any oppressive or unfair or fraudulent exercise of the power of sale given by the terms of an agreement under which security has been pledged." Remington on Bankruptcy (2d Ed.) vol. 1, § 761.

During the course of the argument counsel for respondent asserted that the bankruptcy proceeding instituted herein was filed in bad faith, in order to embarrass and otherwise unreasonably delay the respondent in collecting indebtedness owing to him, that an effort will be made to delay the election of a trustee, and that said bankruptcy proceeding will not be prosecuted with due diligence.

In the light of the record before us, particularly the brief period of time which has elapsed since the entry of the order adjudicating petitioner a bankrupt, these charges must be held to be unfounded as well as premature. On the other hand, this court recognizes the right of respondent to bring to its attention any matter which may hereafter occur which indicate that its process is being abused.

For the foregoing reasons, the order to show cause is discharged.