## In re HUDSON RIVER NAV. CORPORATION.

### Ex parte TEN EYCK.

#### Appeal of CHASE NAT. BANK.
#### No. 358.

Circuit Court of Appeals, Second Circuit.
April 4, 1932.

George J. Hatt, 2d, of Albany, N. Y., and Allan D. Emil, of New York City, for appellant.

Milbank, Tweed, Hope & Webb, of New York City (Timothy N. Pfeiffer and Donald Mackenzie, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The bankrupt, a common carrier on the Hudson River, was adjudicated on January 18, 1932, in the District Court for the Northern District of New York, and the appellant has been appointed its trustee. Before petition filed, it had borrowed large sums of several banks, to secure which it delivered certain securities to one of the lenders, to hold on behalf of all. This collateral consisted of two notes of another company, made to the bankrupt's order, and secured by a chattel mortgage upon a steel steamer; a mortgage upon an oil barge, owned by and in possession of the bankrupt; a note of a third company, made to the bankrupt's order, and certain shares of that company's stock. The agreement of pledge assigned these securities to the bank and provided that it might sell them without notice upon default, as it was proposing to do in the case of the two notes secured by the mortgage. The trustee applied to the District Court for the Southern District of New York, by virtue of its ancillary jurisdiction in bankruptcy, for an order enjoining the proposed sale, alleging, not that the pledge was invalid, or that the bank was not proceeding in accordance with the agreement, and that he wished to prepare to contest its rights in the state court; but that a sale at that time would result in great sacrifice of the collateral, which was amply sufficient to protect the loans; that some of the securities were essential to the conduct of its business; and that a reorganization was in contemplation at which all its property would be sold. It does not appear whether the notes or certificates of stock were endorsed; nor do we know whether a chattel mortgage on the barge was ever executed, or whether indeed the supposed lien upon it was more than a contract to mortgage. But the contract affected to make outright assignment of the property—though only as security—and to deliver it. The court denied the motion, and the trustee appealed.

The case presents a difficulty we have before discussed (In re Roman (C. C. A.) 23 F.(2d) 556; In re Borok (C. C. A.) 50 F. (2d) 75); that of applying to choses in action notions drawn from the law of chattels, more particularly of deciding whom we shall say to be in "possession" of such property. As to both notes (section 79 Negotiable Instruments Law [Consol. Laws N. Y. c. 38]), and shares (section 162 (b), Personal Property Law [Consol. Laws N. Y. c. 41]), delivery of the documents under a written assignment transfers "title," when the transfer is absolute; and by "title" we understand that the assignee becomes the obligee. Though these transfers were in pledge, it would seem that pro tanto the sections might convey to the pledgee his "special property," whatever that may be, though so far as we can find the case has not arisen. But as the question does not turn upon "title" but "possession," the difficulty still remains. It seems to us unnecessary to refine too far; in substance, entire control over the obligation passes to the pledgee, who certainly gets possession of the documents, without which, so long as the pledgee acts in accord with the agreement, the pledgor cannot assert any rights as obligee. For practical purposes the pledgee has therefore immediate dominion as between the two, and with it goes the power to resist any ac-

tion by the bankruptcy court, which must be founded on the fact that the bankrupt had such dominion, when the petition was filed. This was implicit in our ruling in In re Mertens, 144 F. 818, and we directly held so in In re Mayer, 157 F. 836; since when it has been generally understood that bankruptcy does not touch the power of a pledgee of shares of stock to close out his collateral. Nothing would be more disturbing to transactions of the kind than a doubt thrown upon that ruling. Millions of dollars are daily lent upon like collateral, which fluctuates from hour to hour; unless the pledgee is free to choose his time to sell, his security may disappear. The same is not indeed true of shares like those at bar, or of notes, neither of which vary rapidly in value; but the same legal reasons exist as to them also. The pledgee, having taken possession of the documents, supposes himself for just that reason to be the sole judge of his necessities, and lends on that understanding. So long as he keeps within the terms of the agreement, he need not concern himself with the pledgor's fate, or that of his creditors, who must stand in his shoes.

It is true that between the filing of the petition and the appointment of a trustee, courts have at times restrained even a lienor in possession of the res. In re Mitchell, 278 F. 707 (C. C. A. 2). But this is only ancillary to the assertion by the trustee of his remedies elsewhere; it must appear that there is some chance of success, of which he alone can avail; that is, that the creditors or their receiver cannot protect his interests meanwhile. In the case at bar the trustee has been appointed and himself moves, and he shows no reason to suppose that he can succeed in another court. The Bankruptcy Act itself preserves existing liens (§ 67d, 11 USCA § 107 (d), and allows lienors to liquidate their securities under their agreements (§ 57h, 11 USCA § 93 (h); Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945). These sections no doubt primarily touch the rights involved, but when the bankrupt has surrendered dominion, the immunity extends not only to the right, but to the forum as well. The bankruptcy court had no jurisdiction to stay the proposed sale, and the order, so far as it affected the notes and shares, was right.

Other considerations control as to the barge, but as the papers do not suggest that the mortgagee proposes to sell it, they are for the present moot. Assuming that the bank has a valid chattel mortgage, but that the barge was in the bankrupt's possession when the petition was filed, no doubt the leave of the bankruptcy court was necessary to a foreclosure. Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645. Yet even so, it does not follow that it would be a proper exercise of its power to deny the mortgagee his right to an immediate sale, on the ground that this might interfere with some plan of re-organization, or result in a sacrifice. It is one thing for the bankruptcy court itself to sell the res, forbidding the mortgagee to foreclose in the state court, and another to deny him the substance of his bargain, that is, the untrammeled power to decide whether a present sale is necessary for his protection. On what theory the mortgagor's creditors may circumscribe that power, why their rights should be larger than those reserved by their debtor, or they entitled to plead in misericordiam, it is very difficult to see. In re Jersey Island Packing Co., 138 F. 625, 2 L. R. A. (N. S.) 560 (C. C. A. 9), when analyzed does not go so far, and we should hesitate before subscribing to the doctrine of Allebach v. Thomas, 16 F.(2d) 853 (C. C. A. 4). This question not being presented, we do not however declare ourselves upon it.

Order affirmed.