**In re MANN.**

**In re SHERWOOD DISTILLING CO.**

**Nos. 10310, 10311.**

United States District Court
D. Maryland.

Oct. 2, 1953.

Venable, Baetjer & Howard, Stuart S. Janney, Miles, Walsh, O'Brien & Morris, Seymour O'Brien, Baltimore, for petitioning creditors.

Semmes, Bowen & Semmes (Richard F. Cleveland, William A. Fisher, Jr.), Baltimore, for Peoples First Nat. Bank & Trust Co.

Lee I. Hecht, Baltimore, for Reconstruction Finance Corp.

Anderson, Barnes & Coe, Wilson K. Barnes, William Hoffenberg, Baltimore, for bankrupts.

WILLIAM C. COLEMAN, Chief Judge.

These two proceedings are now before the Court on petitions of Peoples First National Bank & Trust Company, Pittsburgh, Pennsylvania (hereinafter referred to as the Bank), to sell as pledgee or as a judgment creditor of The Sherwood Distilling Company (hereinafter referred to as Sherwood) and its president, Louis Mann, 980 shares of the capital stock of Sherwood, being all of the Sherwood stock outstanding which the Bank

acquired as collateral security for the debt upon which the Bank obtained a judgment against Sherwood and Mann in this Court on March 15, 1951, in the amount of $694,600 and interest, in civil suit No. 5105. This judgment was affirmed by the Court of Appeals for this Circuit, Sherwood Distilling Co. v. Peoples First Nat. Bank & Trust Co., 193 F.2d 649. Petition for writ of certiorari, filed by Sherwood and Mann in the Supreme Court, 344 U.S. 818, 73 S. Ct. 13, was subsequently denied and no payment has ever been made on account of this judgment.

In addition to this stock given as collateral, the Bank was given certain warehouse receipts for whiskey and other spirits covering substantially all of the inventory owned by Sherwood and Mann. Subsequent to the filing of the suit by the Bank in which the Bank obtained its judgment as aforesaid, Sherwood and Foust Distilling Company, Inc., an affiliate, filed interpleader actions against the Bank and other creditors of Sherwood and Mann, due to the fact that such creditors held duplicate or conflicting warehouse receipts as collateral, or as apparent owners, covering all of the aforesaid whiskey and other spirits also covered by the warehouse receipts held as collateral by the Bank. In these interpleader proceedings this Court, therefore, issued orders restraining the interpleader defendants from selling, removing or otherwise disposing of any of the whiskey and other spirits pending further order of this Court. These restraining orders did not, however, apply to the stock of Sherwood held by the Bank as collateral.

The Bank's petitions further set forth that the present value of the whiskey and other spirits represented by the warehouse receipts, held as collateral by the Bank, is far less than the amount of its judgment against Sherwood and Mann; and that the Bank believes it possesses the right to sell the stock notwithstanding the petitions in bankruptcy pending in these proceedings, but that it is appropriate to obtain prior approval of this Court. The Bank further asserts that the shares of stock of Sherwood which it holds as collateral are only of nominal value, if any, in view of Sherwood's financial condition. It represents that it will purchase this stock at such sale or cause it to be purchased by a nominee, if it can be purchased at such sale for not more than $25,000. The Bank further represents that if and when it or its nominee becomes the owner of such stock, it will promptly take the necessary steps to consent to Sherwood being adjudicated a bankrupt, or to place Sherwood in voluntary bankruptcy in this Court; that the sole reason for such contemplated action is to expedite an orderly liquidation of Sherwood's assets for the benefit of all of Sherwood's creditors, as their rights may be determined pursuant to law, and that the Bank and other creditors of both Sherwood and Mann will clearly benefit if the bankruptcy of Sherwood is expedited in this manner. The Bank has sent copies of its petitions to counsel of record of all of the known creditors of Sherwood and Mann.

In the answer of Sherwood to the Bank's petition, Sherwood denies its insolvency on the dates of the acts of bankruptcy alleged in the petition filed against it. It also denies that the Bank is a pledgee of the 980 shares of the Sherwood stock; asserts that it would be most inappropriate, unprecedented and contrary to law for this Court to approve the sale of this stock by the Bank, and denies that other creditors of Sherwood and Mann will benefit if the bankruptcy proceedings against Sherwood and Mann are interfered with as proposed by the Bank's petition for sale of the Sherwood stock. Sherwood further asserts that this Court has no power to authorize the Bank, a creditor, and not a receiver or trustee appointed by this Court, and not representing the general creditors of Sherwood and Mann, to sell the stock in execution upon its judgment; but that even if this Court be deemed to have such power, the circumstances do not warrant any such authorization and such would be an abuse of the discretion of this

Court; that the Bank is attempting by its petition to seek the aid of this Court to perfect a non-existent preference to the injury of both Sherwood and Mann, and if either is adjudicated a bankrupt, to the injury of the general creditors of both of them; that to permit the pledgee Bank to sell the stock would be to deny Sherwood and Mann the right to a hearing on the issue of their insolvency and other issues, contrary to due process of law, and would also defeat their right of appeal from any adverse decision by this Court on questions heretofore presented in this proceeding.

The following are my views and my conclusions: This has been, from the very beginning, a bankruptcy proceeding fraught with endless obstructions, due primarily to the attitude and mismanagement of Mann as president and in control of Sherwood through his stock ownership. Without going into the details of his attitude and mismanagement, suffice it to say that Sherwood is in a very bad condition at the present time. That is obvious from what has been developed in these bankruptcy proceedings. Sherwood has a great number of creditors to whom large sums are owed. Its warehouse receipts are legion. There is a question about their fraudulent duplication; there is a question about who owns the receipts. Even though all of this mismanagement and fraud may not be attributable to Mann, it is a fact that all of these circumstances just referred to have brought about an extraordinary situation, whereby the bankruptcy proceedings have been protracted for an inordinate length of time.

There is involved here by reason of the warehouse receipts a commodity, whiskey, which may be likened to perishable goods, in one sense, in that there is a very fickle market in that commodity; and at every turn the bankruptcy proceedings become more and more involved. It is true that the company, as well as Mann, have certain legal rights that cannot be taken away from them under the present bankruptcy proceedings. This Court recognizes that fully, and has no disposition, no intent whatsoever, to impair or interfere with those rights. But creditors have rights also; and in connection with those rights arises the question as to what may be done with respect to the stock which has been pledged to the creditor bank as security for the large debt due it. Adjudication of the validity of this debt and the pledge of the stock to secure it has been established in civil action no. 5105. This Court has been asked to pass upon the creditor bank's right to sell this stock. A petition to be informed as to what are the rights of the pledgee creditor has been presented to the Court and all questions involved fully argued.

As stated by counsel for the Bank, Mann, as a large but unsecured creditor of his company, apparently has no chance of salvage for himself except through postponing adjudication in the forlorn hope that something unforeseeable may inflate the value of his company's assets. But this circumstance is often present when collateral is to be sold. Any present or foreseeable depression of values which might justify staying this sale on the theory that it would not be fair under existing conditions, does not exist at the present time. Also, as stressed by counsel for the Bank, the right of a pledgee to sell should not be controlled by the fact that the sale may change ownership of a corporation which has previously denied insolvency. As is pointed out, unless this were true, courts would be burdened with weighing disappointment and opposition of all sorts which one necessarily suffers when required to part with control of his property. Also, unless such were true, difficult problems of determining just what is control of a corporation would arise. For example, as suggested by counsel for the pledgee Bank, could a pledgee sell 49% but not 51% of the company's stock? Must a court determine whether less than 50% represents the effective control in the particular circumstances? No creditors of either Mann or his company—only Mann, himself, and his counsel, Hoffenberg—have

indicated any objection to what the pledgee Bank desires to do, although all known creditors have been duly notified through their counsel in this and related proceedings. The pledgee Bank is by far the largest creditor of both Mann and his Company. However, the interest of the other creditors is similar except in degree, namely, to get the control of the bankrupts' assets in the hands of independent parties so that their value may be best realized. It is not to be assumed that other creditors would fare worse with the pledgee Bank owning the stock than they do now with Louis Mann in control of it.

The Court reaches the conclusion that, under these extraordinary circumstances, and in order to comply with the requirements of the Bankruptcy Act, the creditor bank need not ask this Court for permission to sell this stock, because it believes that the right to sell is basic to the pledgee's right, and is permitted by the Bankruptcy Act. The creditor bank is merely required to notify the Court of its intention to sell so that the Court may be given opportunity to supervise and control the pledgee's action under the pledge agreement. The Court cannot, of course, blink the fact that by the creditor bank acquiring control of the stock of the company, further need for these entire bankruptcy proceedings may be eliminated. But this Court has been referred to no decision to the effect that under such extraordinary circumstances as those before us, to permit sale of the stock would be wrong. The bankrupt has thwarted at every turn a proper and appropriate acceleration of these proceedings so that all questions could be clarified and brought to an early conclusion to the best interests of the creditors. Therefore the ordinary procedure should not be interfered with, namely, the Bank's sale of the stock which it lawfully holds as pledgee for the bankrupt's debt to it.

Section 57, sub. h, 11 U.S.C.A. § 93, sub. h, of the Bankruptcy Act provides: "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court." In construing this provision in 1907 when it was identical in language with the Section as it now stands, as just quoted, except the last sentence has been added, the Supreme Court in Hiscock v. Varick Bank of New York, 206 U.S. 28, at page 41, 27 S.Ct. 681, 685, 51 L.Ed. 945, said: "The bankruptcy act did not attempt, by any of its provisions, to deprive a lienor of any remedy which the law of the state vested him with; on the other hand, it provided," and the opinion then quoted the Section of the Act as it then stood. Similarly in In re Hudson River Navigation Corporation, 57 F.2d 175, the Circuit Court of Appeals for the Second Circuit, held that the Bankruptcy Court had no jurisdiction to stay a proposed sale of notes and stock pledged as security by the bankrupt, stating in its opinion 57 F.2d 175 at page 176 that "bankruptcy does not touch the power of a pledgee of shares of stock to close out his collateral. Nothing would be more disturbing to transactions of the kind than a doubt thrown upon that ruling. Millions of dollars are daily lent upon like collateral, which fluctuates from hour to hour; unless the pledgee is free to choose his time to sell, his security may disappear. The same is not indeed true of shares like those at bar, or of notes, neither of which vary rapidly in value; but the same legal reasons exist as to them also. The pledgee, having taken possession of the documents, supposes himself for just that reason to be the sole judge of his necessities, and lends on that understanding. So long as he keeps within the terms of the agreement,

he need not concern himself with the pledgor's fate, or that of his creditors, who must stand in his shoes."

See also Eddy v. Prudence Bonds Corp., 2 Cir., 165 F.2d 157; Chase National Bank of City of New York v. Hendrickson, 3 Cir., 89 F.2d 997; Kerr v. Southwestern Lumber Company of New Jersey, 5 Cir., 78 F.2d 348.

The only words in Section 57, sub. h as it stood prior to the Chandler Act that might have been understood to nullify the creditor's vested rights to determine the value of its security in the manner provided for by the terms of the pledge then were and still are the words "as the court may direct". These words were in the Act when the Supreme Court decided the Hiscock case, supra, and recognized the immunity of the pledgee's contract giving him the right to sell. The Chandler Act of 1938, by adding to Section 57, sub. h its present last sentence, namely, the words "Such determination shall be under the supervision and control of the court" did nothing to warrant a different construction of the clause "as the court may direct". In other words, the contribution of the 1938 amendment of this section is confined to the statutory grant of power of supervision and control. "This power" is of great practical importance and may perhaps be understood to imply certain duties on the part of the pledgee who expects to file a deficiency claim to cooperate with the court and to enable it to exercise its power timely, and not merely retrospectively. But if so broad an authority as the clause "as the court may direct" failed to persuade the Supreme Court in the Hiscock case that the Bankruptcy Act could discard the pledgee's contractual rights, it would, in the absence of any indication to the contrary in the legislative history of the Chandler Act of 1938, be improper to construe what is called a mere power of "supervision and control" as implying a power to divest the creditor of the rights in reliance upon which he decided to extend credit." Collier on Bankruptcy, 14th Edition, Volume 3, Section 57.20.

It is true that among the amendments made to the Bankruptcy Act in 1938, § 67, sub. d, as it previously stood, was eliminated. It provided as follows: "Liens given or accepted in good faith and not in contemplation of or in fraud upon this Act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this Act." 30 Stat. 564. It is further true that this provision was before the Supreme Court in the Hiscock case but there is no reason to say that the basic principle of the Hiscock case in its interpretation of Section 57, sub. h is not still applicable. Section 67, sub. d of the old Act was merely declaratory of the law as it had long existed and there is nothing to indicate that by the elimination of Section 67, sub. d it was intended to alter the principle which it announced. This is confirmed by the fact that there is retained in the Act, as amended, the limiting provision in regard to present consideration in connection with voidable preferential transfers in section 60, sub. b, 11 U.S.C.A. § 96, sub. b; in connection with voidable liens in Section 67, sub. a(3), 11 U.S.C.A. § 107, sub. a(3); and in connection with fraudulent transfers in Section 67, sub. d(6), 11 U.S.C.A. § 107, sub. a(6).

It is beyond question that the validity of the pledge of the stock was directly and finally adjudicated by the judgment which the Bank obtained in Civil Action No. 5105. In that suit, this Court's instructions to the jury contain the following: "I further instruct you that, if you should find that the plaintiff bank is entitled to recover on the note, then it is also entitled to all of the warehouse receipts and stock of Sherwood involved in this case and which were given as collateral for this note." The verdict of the jury and judgment thereon were affirmed by the Court of Appeals. On denying a petition for rehearing, that Court said that this Court's instructions "left the case to the jury under a charge which correctly stated the law and the

jury have found against the defendants." Certiorari was denied by the Supreme Court.

There is no merit in the argument that the Bank lost the collateral by merger of the note and judgment. The recovery of a judgment upon a principal debt does not affect the pledgee's right to hold and enforce a pledge taken to secure that debt, since the very nature of collateral security means that it may be resorted to for satisfaction of the principal debt, if payment of the latter is not otherwise obtained. Dawson v. Lambert, 8 Gill, Md., 216.

We agree with the contention of counsel for the Bank that the fact that the collateral involves control of an alleged bankrupt corporation does not alter the Bank's, the pledgee's, rights. Mann, through ownership of Sherwood stock, has chosen to deny Sherwood's insolvency. He is an unsecured creditor of Sherwood and, next to the Bank, the largest creditor. Mann has no vested right to prevent a new owner of Sherwood from differing with him as to control and management of the company. A determination as to whether Sherwood is solvent or insolvent is not a prerequisite to approval of the Bank's sale of the stock of Sherwood which it holds as collateral. If Sherwood is solvent, unquestionably the Bank has the right to sell the stock pursuant to the pledge of it. Therefore, should Sherwood establish its solvency, this would merely confirm the Bank's right to sell without court authority. If, on the other hand, Sherwood were proved to be insolvent, this would confirm the fact that the Bank's sale of the stock would be necessary and proper. Also, should the Bank, as is contemplated, obtain control of Sherwood through purchase of the stock, it might still cause Sherwood to become a voluntary bankrupt.

Since it is believed that the motive of the Bank underlying its intent to sell the stock held as collateral is proper, it is unnecessary to consider the question whether a right to a legal remedy is affected by the motive with which it is exercised.

An order will be signed in accordance with this opinion.