## MANN
### v.
### PEOPLES FIRST NAT. BANK & TRUST CO.

### SHERWOOD DISTILLING CO.
### v.
### PEOPLES FIRST NAT. BANK & TRUST CO.

### Nos. 6700, 6701.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 13, 1953.

Decided Jan. 4, 1954.

Wilson K. Barnes, Baltimore, Md. (William Hoffenberg, Baltimore, Md., on brief), for appellants.

Richard F. Cleveland, Baltimore, Md. (William A. Fisher, Jr., Baltimore, Md., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals in the involuntary bankruptcy proceedings instituted against one Louis Mann and the Sherwood Distilling Company, a corporation in which he is the sole stockholder. An adjudication of bankruptcy has not been had in either of these proceedings; but, while they are still pending, the Peoples First National Bank and Trust Company of Pittsburgh (hereafter called the bank) has filed a petition that it be allowed to sell the Distilling Company stock which Mann had pledged with the bank as security for a loan. From an order granting the leave to sell, 116 F.Supp. 852, both Mann and the company have appealed.

The facts are that Mann is the sole stockholder in the company, owning its entire capital stock of 980 shares. He and the company were sued by the bank on a note secured by a pledge of the stock and certain whiskey certificates, and the right to recover on the note and to hold the stock and whiskey certificates as collateral thereto was put in issue in that case. Judgment was rendered in favor of the bank and against both Mann and the company for the sum of $694,600, and the judgment was affirmed by this court on January 3, 1952. Sherwood Distilling Co. v. Peoples First National Bank & Trust Co., 4 Cir., 193 F.2d 649. Rehearing was denied February 18, 1952. See 4 Cir., 194 F.2d 387. Petitions in involuntary bankruptcy were filed against both Mann and the company on May 22, 1952. In the petitions it was alleged that both Mann and the company were insolvent, that they had made preferential transfers of property while insolvent and had allowed the bank to acquire under its judgment liens upon their property which they had failed to vacate or discharge. On June 4, 1952, Mann and the company filed motions to dismiss the bankruptcy proceedings and on the same date filed answers denying insolvency and pleading other defenses.

On December 5, 1952, the motions to dismiss the proceedings were denied but no action was taken toward hearing the issues raised by the answers. On January 16, 1953, the petitioning creditors filed petition asking that Mann and the company be required to file their books, papers and accounts for inspection and these were duly filed in accordance with order entered on the petition. On February 9, 1953, before these had been filed, the bank filed a petition in the Mann case asking that it be allowed to sell the stock in the company which it held as pledgee, stating that, if it were allowed to do so, it would purchase the stock or cause it to be purchased if this could be done for not more than $25,000 and would then, as sole stockholder of the company, consent for it to be adjudicated a bankrupt or take the

necessary steps to have it file a voluntary petition in bankruptcy. The pertinent paragraphs of the petition are as follows:

"7. That Peoples Bank desires to sell the said 980 shares of the stock of Sherwood, at public sale, pursuant to its rights as pledgee, and/or as a judgment creditor of Sherwood and/or Mann, and is advised and believes that it has the right to sell such stock, notwithstanding the pending petitions in bankruptcy in these causes, but Peoples Bank is further advised that it is appropriate to obtain the prior approval of this Honorable Court, in which these bankruptcy causes are pending.

"8. That Peoples Bank believes said 980 shares of stock of Sherwood are of only nominal value, if any, in view of Sherwood's financial condition; Peoples Bank represents that it will purchase such stock at such sale, or cause it to be purchased by a nominee, if the same can be purchased at such sale for not more than $25,000, and Peoples Bank further represents that if and when it or its nominee becomes the owner of such stock, it will promptly take or cause to be taken the necessary steps to consent to adjudication by Sherwood in the present proceedings, or to place Sherwood in voluntary bankruptcy, in this Court; and Peoples Bank further represents that the sole reason for such contemplated procedures is to expedite an orderly liquidation of Sherwood's assets for the benefit of all of Sherwood's creditors as their rights may be determined pursuant to law."

Mann filed answer in which he denied that the shares of stock in the Distilling Company had been pledged to the bank and alleged that the books of the Distilling Company showed that they had a value of $596,614.13, as of April 30, 1952, less than a month prior to the filing of the petition to have the company adjudged bankrupt. The judge below, taking judicial notice of what was at issue in the suit by the bank on the note and collateral, found that the shares of stock had been validly pledged to the bank and granted it authority to sell them as pledgee, holding that the bank had the right to make the sale without obtaining the court's permission and that there was nothing in the purpose for which the sale was desired which would justify the court in refusing to permit it.

■ We think that the judge below was correct in holding that he could take judicial notice of the proceedings had before him in the prior suit to which Mann and the Distilling Company as well as the bank were parties. Morse v. Lewis, 4 Cir., 54 F.2d 1027, 1029; Fletcher v. Bryan, 4 Cir., 175 F.2d 716; Ellis v. Cates, 4 Cir., 178 F.2d 791, 793. The record in that case, which was before us on appeal, shows that the validity of the pledge of the stock was expressly put in issue by the pleadings, that evidence was taken at length with regard thereto, that the matter was covered by the charge of the court and that the jury's verdict found the issues in favor of plaintiff. The fact that the judgment may not have dealt with the pledged collateral is not conclusive where it is otherwise shown by the record in the case that the matter was at issue and duly passed upon. The parties are not entitled to try over again an issue which has been tried and decided in the prior litigation.

■■ We do not think, however, that the order allowing the sale of the stock by the pledgee can be sustained when it appears that there is a controversy as to the solvency of the corporation upon which the value of the stock necessarily depends, that this controversy has been raised in an involuntary bankruptcy proceeding against the corporation which it is contesting, that this proceeding has been pending in court for more than a year without having been decided, and that the bank has admitted in its petition that its purpose in asking the sale is to have the stock bought in by someone who will consent to an adjudication in bankruptcy. The provisions of the bankruptcy act, 11 U.S.C.A. § 1 et seq., providing for a hearing in involuntary pro-

ceedings cannot be bypassed in this way. It is no answer to say that the pledgee has the right to sell the stock pledged with it as collateral whether the pledgor or the corporation is solvent or insolvent, and that its purpose in making the sale is immaterial. It is the duty of the court from the time of the filing of the petition in bankruptcy to take all necessary action to protect the assets of the estate of the alleged bankrupt. Not only should the court not consent to a sale which might result in assets being sacrificed pending adjudication but should use its power to prevent their being sacrificed when it appears that a sale might have this effect; and the fact that the sale is sought for the purpose of avoiding a hearing on the issues of insolvency is an added reason why permission to make the sale should not be granted.

In the case before us, petitions in involuntary bankruptcy had been pending for more than a year against both Mann and the company, who claimed that they were not insolvent but that the stock of the company was worth more than half a million dollars. The bank alleged that the stock had only nominal value and stated that it was willing to put up only $25,000 for the purpose of buying it in. Whatever the value of the stock, it is perfectly clear that it would bring little or nothing if sold while the petition in bankruptcy was pending; for unless a purchaser had some such motive in making the purchase as is avowed in the petition he would not ordinarily be willing to buy into a law suit. This court dealt with a somewhat similar situation in Wingert v. Kieffer, 4 Cir., 29 F.2d 59, 60, where we said:

"It is ordinarily true that the pledgee of stock, unless restrained by the bankruptcy court, may proceed to sell under the power of sale contained in the pledge without asking the consent of the court. But it by no means follows that the court should allow the pledgee to make such sale, where it appears that the pledgee is one of the petitioners in the bankruptcy proceeding, and, as such, has invoked the power of the court to handle the estate of the alleged bankrupt, and, by the filing of the petition and securing the appointment of receivers, has made it impossible for him to protect his interest on the sale. The power of the court to enjoin the sale by the pledgee cannot be doubted. Allebach v. Thomas, 4 Cir., 16 F.2d 853. And we think that ordinarily the court should not hesitate to exercise the power where it appears that, while a petition in bankruptcy is pending, and before there has been an adjudication, a petitioning creditor attempts to sell property pledged or mortgaged to him by the alleged bankrupt."

In the case of Wingert v. Kieffer, a receiver for the assets of the alleged bankrupt had been appointed pending adjudication of bankruptcy and the language above quoted was used to express our disapproval of the practice of permitting a sale of pledged assets where the pledgee had filed the petition in bankruptcy and the pledgor had been rendered impotent to protect his interest on the sale. The same principle should apply where the filing of petitions against both the pledgor and the corporation whose stock he has pledged will render it practically impossible for him to protect his interest and will have the effect of destroying the sale value of the stock. A pledgee asking a sale for the mere purpose of liquidating his collateral and applying the proceeds on the debt of pledgor is in a very different position from a pledgee asking a sale for the purpose of avoiding a hearing on the issues raised by a petition and answer in bankruptcy.

Some of the cases, without considering any such circumstances as are here involved, lay down in general terms the rule that in ordinary bankruptcy proceedings the court will not enjoin a sale by a pledgee. In re Mayer, 2 Cir., 157 F. 836; In re Hudson River Navigation Corporation, 2 Cir., 57 F.2d 175.

This is not the rule applied in reorganization proceedings under recent amendments of the Bankruptcy Act; and in such a proceeding in which the power of a bankruptcy court to enjoin sale by pledgees was sustained the Supreme Court refused to express an opinion as to whether the rule should be applied in ordinary bankruptcy. Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 676, 55 S.Ct. 595, 79 L.Ed. 1110. The power of the bankruptcy court to enjoin the foreclosure of a mortgage on real estate, however, is expressly recognized (Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060), and there can be no difference between the power to enjoin sale under a mortgage and sale under a pledge. As said by the Supreme Court in the case of Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., supra [294 U.S. 648, 55 S.Ct. 606], "So far as constitutional power is concerned, there is no difference between an injunction restraining the enforcement of a real estate mortgage and one restraining the enforcement of a pledge by the sale of collateral security". And there is no difference that we can see between the two when the question under consideration is the protection of the estate of the bankrupt.

■ The enforcement of the lien of a pledge by sale of the pledged property is not different, for the purposes of the question here under consideration, from the enforcement of any other lien (In re Henry, D.C., 50 F.2d 453); and the rule applies that the court of bankruptcy "may inquire into the validity of liens, marshal them, and control their enforcement and liquidation." Straton v. New, supra, 283 U.S. 318, 321, 51 S.Ct. 465, 466, 75 L.Ed. 1060. While a court of bankruptcy should not ordinarily interfere with the right of a pledgee to sell the pledged property, it is clearly within the power and duty of the court to protect assets which may come into the hands of the trustee in bankruptcy upon an adjudication, See Gins v. Mauser Plumbing Supply Co., 2 Cir., 148 F.2d 974, 979; and the court should certainly not give its consent to a sale by the pledgee under such circumstances as here exist, where there is a controversy as to the value of the stock and the stock, even if it has value, will probably sell for little or nothing in view of the pending bankruptcy proceedings, and where the sale is sought for the purpose of defeating a hearing on the questions raised by the answers to the bankruptcy petitions. See In re Henry, D.C., 50 F.2d 453; In re Purkett Douglas & Co., D.C., 50 F.2d 435; Grabosky v. Kephart, 3 Cir., 72 F.2d 542.

There is nothing to the contrary in Hiscock v. Varick Bank, 206 U.S. 28, 27 S.Ct. 681, 51 L.Ed. 945, relied upon by appellee. That case held merely that the bankruptcy act did not deprive a lienor of any rights or remedies with respect to collateral held by him and that a sale by a pledgee made after the filing of a petition in bankruptcy would not be set aside under the circumstances there appearing. There was no holding that the court was without power to enjoin a sale for the protection of the bankrupt's interest in pledged collateral or that the court should authorize the pledgee to make a sale for the purpose of having it purchased for a nominal sum and used to defeat a hearing in a pending bankruptcy proceeding. See also Collier on Bankruptcy, 14 ed., vol. 3, p. 270.

Whether a pledgee should be permitted to sell pledged property pending an adjudication of bankruptcy is, under ordinary circumstances, a matter resting in the sound discretion of the court of bankruptcy. Under the circumstances appearing in this case, however, we do not think that the order permitting the sale falls within the limits of a sound discretion but that an order staying the sale should have been entered pending the hearing on the petitions for adjudication. The learned trial judge in granting the order permitting the sale adverted to the fact that the alleged bank-

rupts had been guilty of dilatory tacti-- which had unnecessarily delayed bankruptcy proceedings and hinder bank in the assertion of its rights under its judgment and pledge. We do not doubt that the bank has proceeded in good faith in the steps it has taken or that in entering the order permitting the sale the trial judge was endeavoring to expedite proceedings which were being unduly delayed. We do not think, however, that under the circumstances heretofore set forth sale of the stock should be permitted until the petitions for adjudication in bankruptcy have been passed upon.

The order appealed from will accordingly be reversed and the cases will be remanded for further proceedings not inconsistent herewith.

Reversed.